899 So.2d 1121 (2005)
ALLSTATE INDEMNITY COMPANY, et al., Petitioners,
v.
Joaquin RUIZ and Paulina Ruiz, Respondents.
No. SC01-893.
Supreme Court of Florida.
April 7, 2005.
*1122 David B. Shelton and Lori J. Caldwell of Rumberger, Kirk and Caldwell, Orlando, Florida, for Petitioner.
Henry A. Seiden, West Palm Beach, Florida and Philip d. Parrish, Miami, Florida, for Respondent.
William F. Merlin, Jr. and Mary E. Kestenbaum of Gunn Merlin, P.A., Tampa, Florida on behalf of United Policyholders, as Amicus Curiae.
LEWIS, J.
We have for review Allstate Indemnity Co. v. Ruiz, 780 So.2d 239 (Fla. 4th DCA 2001), which expressly and directly conflicts with a number of cases from other district courts with regard to issues concerning application of work product privilege to shield documents from discovery in the insurance bad faith context. See Vesta Fire Ins. v. Figueroa, 821 So.2d 1233 (Fla. 5th DCA 2002); Fla. Farm Bureau Gen. Ins. Co. v. Copertino, 810 So.2d 1076 (Fla. 4th DCA 2002); Wal-Mart Stores, Inc., v. Ballasso, 789 So.2d 519 (Fla. 1st DCA 2001); McRae's, Inc. v. Moreland, 765 So.2d 196 (Fla. 1st DCA 2000); Prudential Ins. Co. of Am. v. Fla. Dep't of Ins., 694 So.2d 772 (Fla. 2d DCA 1997); Anchor Nat'l Fin. Servs., Inc. v. Smeltz, 546 So.2d 760 (Fla. 2d DCA 1989). Because we conclude there is clearly conflict and confusion in the application of discovery concepts in the case law, and particularly in the insurance bad faith context, we determine that we have jurisdiction in this case and that we should exercise our discretion to resolve the conflict. See art. V, § 3(b)(3), Fla. Const. It is our view that the conflict regarding whether the work product privilege attaches to materials created when litigation is "substantial and imminent" as held in Ruiz, as opposed to when legal action is "merely foreseeable," as held in the conflict cases, in this context is an unnecessary and unfortunate outgrowth of the inappropriate distinctions with regard to discovery rules applicable to statutory first-party and third-party bad faith actions, whether statutory or common law, developed by Florida courts, and generated by interpretations of our decision in Kujawa v. Manhattan National Life Insurance Co., 541 So.2d 1168 (Fla.1989). For the reasons set forth herein, we quash the decision of the district court below, remand the case to the district court for further consideration consistent with this opinion, clarify the applicable law and recede from our decision in Kujawa.

BACKGROUND AND FACTS
The instant action stems from the improper deletion of a covered vehicle from *1123 the Ruizes' Allstate Indemnity insurance policy by an Allstate agent. One month after securing insurance coverage for their Chevrolet Blazer, Paulina Ruiz purchased an Oldsmobile Cutlass, and instructed the Allstate agent, Paul Cobb, to add that vehicle to the policy. When Cobb added the Cutlass to the policy, he also incorrectly deleted the Blazer. The Ruizes were not notified that the Blazer was no longer covered under their insurance policy.
Subsequently, Joaquin Ruiz was involved in an accident while driving the Blazer, and submitted a normal claim for collision coverage. Allstate Indemnity initially simply denied coverage, asserting that the Blazer was not covered under the policy. The Ruizes initiated a legal action alleging that Allstate Insurance and Allstate Indemnity had engaged in bad faith and unfair claim settlement practices in violation of section 624.155 of the Florida Statutes. In addition to the bad faith claim, the Ruizes' complaint contained one count of negligence against agent Cobb and one count based upon vicarious liability for that negligence against Allstate Insurance. Subsequently, but not until a month after the commencement of the legal action, Allstate Indemnity finally admitted its obligation for collision coverage and to provide benefits to the Ruizes.
After resolution of the basic coverage issue, the Ruizes requested that the trial court compel production of certain documents, including Allstate Indemnity's claim and investigative file and materials, internal manuals, and Paul Cobb's file in connection with the pending alleged "bad faith" action. After an in-camera review, the trial court correctly ordered the documents produced, determining that the documents were relevant and reflected Allstate's handling of the underlying claim and did not constitute work product or attorney-client communications which could be concealed from disclosure. The trial court never addressed the question of whether the Ruizes would have been able to satisfy the standard set forth in rule 1.280(b)(3) of the Florida Rules of Civil Procedure for the discovery of protected work product.
Allstate petitioned the Fourth District Court of Appeal for a writ of certiorari, seeking review of the trial court's order providing discovery, and the district court granted relief in part. Allstate urged that because the problem and dispute associated with coverage was immediately apparent when it refused to make proper payment pursuant to the contract, litigation was anticipated at all pertinent times associated with each of the Ruizes' discovery requests from even the very outset of their interactions and, therefore, none of the material was subject to disclosure. See Ruiz, 780 So.2d at 240. The district court correctly rejected Allstate's argument, noting: "Generally, an insurer's claim and litigation files constitute work product and are protected from production. The analysis differs however when an insurance company is sued for bad faith." Id. (citations omitted). However, the court then attempted to draw a distinction between "material prepared during the normal course of evaluating a claim and materials actually prepared `in anticipation of litigation.'" Id. at 241. Based on that distinction, the district court correctly determined that several items were not protected work product and were properly discoverable, including Cobb's statement of January 7, 1997; computer diaries and entries from the date Joaquin Ruiz reported the accident on December 28, 1996, through January 10, 1997; and an internal memorandum from the insurance adjuster, Mary Jidy, to her boss dated January 7, 1997. See id. at 240. The district court reversed the trial court's determination with regard to the *1124 balance of the documents sought, however, determining that such items were prepared in anticipation of litigation and were thus protected work product not subject to discovery. See id. at 241. The Ruizes assert in this Court that this clearly cannot be the standard for discovery in the insurance bad faith context because the manner in which the underlying benefit dispute was litigated and processed along with the material information related thereto is at the heart of the bad faith dispute and any informed resolution.
We granted Allstate's petition to review the district court's determination which analyzed and addressed the asserted work product privilege. Allstate Indem. Co. v. Ruiz, 796 So.2d 535 (Fla.2001) (table).

ANALYSIS
The instant action causes us to review and revisit previous decisions regarding discovery issues that arise in bad faith insurance litigation. Section 624.155 of the Florida Statutes was designed and intended to provide a civil remedy for any person damaged by an insurer's conduct, including "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." § 624.155(1)(b)(1), Fla. Stat. (2002). As implied by the statute, bad faith actions do not exist in a vacuum. A necessary prerequisite for any bad faith action is an underlying claim for coverage or benefits or an action for damages which the insured alleges was handled in bad faith by the insurer.
It is precisely this two-tiered nature of bad faith actions that engenders the discovery battles so often waged in bad faith litigation, and is at the heart of the matter now before the Court. Allstate asserts that work product protection should extend to and envelop the entire claim file and all files, whatever the name, in the underlying coverage or damage matter or dispute, including an extension into any bad faith litigation which may flow from the processing or litigating of the underlying claim. The insureds and injured third parties, on the other hand, often and logically seek disclosure of actual events in the claim processing as reflected in the studies, notes, memoranda, and other documentation comprising the claim file type material because such information is certainly material and relevant, if not crucial, to any intelligent and just resolution of the bad faith litigation. They assert that this is precisely the evidence upon which a "bad faith" determination is made. As the insureds succinctly posit, how is one to ever determine whether an insurance company has processed, analyzed, or litigated a claim in a fair, forthright, and good faith manner if access is totally denied to the underlying file materials that reflect how the matter was processed and contain the direct evidence of whether the claim was processed in "good" or "bad" faith?
Without access to the underlying files, the insureds assert that an insured, a litigant, judge or jury can know little of the insurer's processing of the matter, thereby jeopardizing and denying a fair analysis of any bad faith claim. They assert that the same would hold true if an insurance company simply sought to totally shield all documents that pertain to the processing of the underlying claim by asserting that such material was prepared in anticipation of the bad faith action. In other words, it is asserted that the claim litigation file material constitutes the best and only evidence of an insurer's conduct. To resolve this bad faith discovery dispute, we must first review the nature of bad faith actions and case law pertaining to discovery.
*1125 There are two distinct but very similar types of bad faith actions that may be initiated against an insurer: first-party and third-party. Third-party bad faith actions have a long and established pedigree, having been recognized at common law in this state since 1938. See Auto. Mut. Indem. Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938). Third-party bad faith actions arose in response to the argument that there was a practice in the insurance industry of rejecting without sufficient investigation or consideration claims presented by third parties against an insured, thereby exposing the insured individual to judgments exceeding the coverage limits of the policy while the insurer remained protected by a policy limit. See Stephen F. Ashley, Bad Faith Actions § 1:01 (1995). With no actionable remedy, insureds in this state and elsewhere were left personally responsible for the excess judgment amount. See id. This concern gave life to the concept that insurance companies had an obligation of good faith and fair dealing.
Florida courts recognized common law third-party bad faith actions in part because the insurers had the power and authority to litigate or settle any claim, and thus owed the insured a corresponding duty of good faith and fair dealing in handling these third-party claims. As this Court explained in State Farm Mutual Automobile Insurance Co. v. Laforet, 658 So.2d 55 (Fla.1995):
Until this century, actions for breaches of insurance contracts were treated the same as any other breach of contract action and damages were generally limited to those contemplated by the parties at the time they entered into the contract. Roger C. Henderson, The Tort of Bad Faith in First-Party Insurance Transactions: Refining the Standard of Culpability and Reformulating the Remedies by Statute, 26 U. Mich. J.L. Ref. 1 (Fall 1992). Eventually, however, insurance contracts began to be seen as distinguishable from other types of contracts because they came to "occupy a unique institutional role" in modern society and affected a large number of people whose rates were dependent upon the acts of not only themselves but also of other insureds. Id. at 8. This became especially true when liability policies began to replace traditional indemnity policies as the standard insurance policy form.... Under liability policies ... insurance companies took on the obligation of defending the insured, which, in turn, made insureds dependent on the acts of the insurers; insurers had the power to settle and foreclose an insured's exposure or to refuse to settle and leave the insured exposed to liability in excess of policy limits. Id. at 19-22. This placed insurers in a fiduciary relationship with their insureds similar to that which exists between an attorney and client. Consequently, courts began to recognize that insurers "owed a duty to their insureds to refrain from acting solely on the basis of their own interests in settlement." Henderson, supra, 26 U. Mich. J.L. Ref. at 21. This duty became known as the "exercise of good faith" or the "avoidance of bad faith." Id. at 22.
Id. at 58 (citations omitted).
Traditionally and historically, the courts in this state did not, however, recognize a corresponding common law first-party action that would protect insured individuals and enable them to seek redress of harm against their insurers for the wrongful processing or denial of their own first-party claims or failure to deal fairly in claims processing. See id. at 58-59. As this Court previously explained, "Florida courts had refused to recognize the tort of first-party bad faith because the type of fiduciary duty that exists in third-party *1126 actions is not present in first-party actions and the insurer is not exposing the insured to excess liability." Laforet, 658 So.2d at 59.[1] This void existed notwithstanding that insurers had the same incentive to deny an insured's first-party claim as may have existed with regard to the refusal to settle a claim presented by a third party against an insured. In both contexts, the insurer's ultimate responsibility could not exceed the policy limits in the absence of a viable bad faith cause of action. See Ashley, Bad Faith Actions § 2:11.
However, with the enactment of section 624.155 in 1982, which adopted and implemented a model act relating to unfair and deceptive practices in the business of insurance promulgated by the National Association of Insurance Commissioners, the Florida Legislature resolved this inequity and recognized the power disparity as it created a statutory first-party bad faith cause of action for first-party insureds, thereby eliminating the disparity in the treatment of insureds aggrieved by an act of bad faith on the part of their insurers regardless of the nature of the type of claim presented. As this Court has recognized, this statutory remedy essentially extended the duty of an insurer to act in good faith and deal fairly in those instances where an insured seeks first-party coverage or benefits under a policy of insurance. See Laforet, 658 So.2d at 59 (citing § 624.155, Fla. Stat. (Supp.1982)); see also Opperman v. Nationwide Mut. Fire Ins. Co., 515 So.2d 263, 266 (Fla. 5th DCA 1987) (quoting legislative history which provides "[section 624.155] requires insurers to deal in good faith to settle claims. Current case law requires this standard in liability claims, but not in uninsured motorist coverage.... This section would apply to all insurance policies."). Importantly, section 624.155 does not distinguish between statutory first- and third-party actions. See Laforet, 658 So.2d at 60. It was pursuant to this provision that the Ruizes filed the statutory first-party bad faith action at issue in the instant proceeding.
Even though the enactment of section 624.155 ushered out the distinction between first- and third-party statutory claims for the purposes of initiating bad faith actions, some court decisions have continued to draw inappropriate distinctions in defining the parameters of discovery in those bad faith actions. In the context of both statutory and common law third-party bad faith actions for failure to settle a claim, discovery of the insurer's underlying claim file type material is permitted over the objections of work product protection. Florida courts have determined:
It is clear that in an action for bad faith against an insurance company for failure to settle a claim within policy limits, all materials, including documents, memoranda and letters, contained in the insurance company's file, up to and including the date of judgment in the original litigation, should be produced.
Stone v. Travelers Ins. Co., 326 So.2d 241, 243 (Fla. 3d DCA 1976); see also United Servs. Auto. Ass'n v. Jennings, 731 So.2d 1258, 1260 (Fla.1999); Dunn v. Nat'l Sec. Fire & Cas. Co., 631 So.2d 1103, 1109 (Fla. 5th DCA 1993). This rule has been historically predicated on the fact that the insurer owes to the insured a duty of fair dealing, honesty and due regard for the insured's interests in handling the third-party litigation. For example, at issue in *1127 Stone was whether Travelers Insurance Company was required to produce to its insured the complete file regarding a personal injury action which had resulted in an excess judgment. See Stone, 326 So.2d at 242. In requiring the company to produce the documents, the Stone court focused on the nature of the relationship between the insured and the insurer in third-party actions. As stated by the Stone court:
In defending personal injury litigation, an insurance company participates not only on behalf of itself, but also on behalf of its insured. Since the plaintiff-judgment creditor stands in the same posture as the insured, entitlement to all materials and documents up to and including the date of judgment, is extended to him.
Id. at 243 (footnote omitted).
The rationale employed in Stone stemmed from the decision in Boston Old Colony Insurance Co. v. Gutierrez, 325 So.2d 416 (Fla. 3d DCA 1976), a case decided just months before Stone, in which a third-party claimant sought documents from the law firm that had represented the insurance company in the underlying action. See Stone, 326 So.2d at 243. In Boston Old Colony, the district court's decision turned on the commonality of legal representation between the insurer and the insured in the underlying action:
As a third party beneficiary of the insurance policy, Gutierrez stands in the same posture as that of Brown, the insured. Just as Brown would be entitled to discovery, including deposition and production files by the attorneys, since both he (Brown) and Boston Old Colony were their clients, Gutierrez has the same right of discovery in furtherance of the preparation of his case.
315 So.2d at 417; see also Continental Cas. Co. v. Aqua Jet Filter Sys., Inc., 620 So.2d 1141, 1142 (Fla. 3d DCA 1993); Koken v. Am. Serv. Mut. Ins. Co., 330 So.2d 805, 806 (Fla. 3d DCA 1976).
By contrast, the rule permitting discovery of materials contained in claim type files in third-party bad faith actions has not been consistently applied in first-party bad faith actions. It appears that this inconsistency has resulted from and been engendered by a misdescription of the nature of the parties' relationship in first-party actions as being totally adversarial, an outdated pre-statutory analysis, as opposed to applying the responsibilities that have traditionally flowed in the third-party context, which are now codified for first-party actions. The Legislature has mandated that insurance companies act in good faith and deal fairly with insureds regardless of the nature of the claim presented, whether it be a first-party claim or one arising from a claim against an insured by a third party. For example, in Manhattan National Life Insurance Co. v. Kujawa, 522 So.2d 1078 (Fla. 4th DCA 1988), approved, 541 So.2d 1168 (Fla.1989), an insured initiated a first-party bad faith action against an insurer for failure to settle a claim under a life insurance policy. In quashing a discovery order that had compelled the production of the insurer's legal file, the district court held, in pertinent part, that "an insurer which is not in a fiduciary relationship to its insured and against which a cause of action is brought under section 624.155 is entitled to protection against production of its legal department file (and its claim file by whatever name)." Id. at 1080. In affirming that decision, this Court, with a very brief analysis, accepted the notion that the district court was correct in concluding that an adversarial relationship continued to exist between the parties in a statutory first-party bad faith action and that in creating the statutory cause of action, the Florida *1128 Legislature did not alter this relationship whatsoever. See Kujawa v. Manhattan Nat'l Life Ins. Co., 541 So.2d 1168, 1169 (Fla.1989); see also Vesta Fire Ins. v. Figueroa, 821 So.2d 1233, 1236 (Fla. 5th DCA 2002) ("The Supreme Court of Florida in Kujawa held that in spite of the shift in focus of the `bad faith' statute, the creation of the statutory remedy for insurer misconduct in adjusting a first-party claim did not strip the insurer of its right to work product immunity.").
Today, however, we reconsider the wisdom of our decision in Kujawa and a fresh look at such decision convinces us that any distinction between first- and third-party bad faith actions with regard to discovery purposes is unjustified and without support under section 624.155 and creates an overly formalistic distinction between substantively identical claims. As we have previously acknowledged in Laforet and other decisions, section 624.155 very clearly provides first-party claimants, upon compliance with statutory requirements, the identical opportunity to pursue bad faith claims against insurers as has been the situation in connection with third-party claims for decades at common law. The Legislature has clearly chosen to impose on insurance companies a duty to use good faith and fair dealing in processing and litigating the claims of their own insureds as insurers have had in dealing with third-party claims. Thus, there is no basis to apply different discovery rules to the substantively identical causes of action. See Fidelity and Cas. Ins. Co. v. Taylor, 525 So.2d 908, 909 (Fla. 3d DCA 1987) (stating that in both first- and third-party bad faith actions, "the pertinent issue is the manner in which the company has handled the suit including its consideration of the advice of counsel so as to discharge its mandated duty of good faith"), disapproved by Kujawa, 541 So.2d 1168 (Fla.1989).[2] We conclude the claims of protection at issue in this case may only be applied consistently with the rationale we have established in identical situations in the third-party context.
Indeed, we conclude that to continue to recognize any such distinction and restriction would not only hamper but would impair the viability of first-party bad faith actions in a manner that would thwart the legislative intent in creating the right of action in the first instance. Just as we have concluded in the context of third-party actions, we conclude that the claim file type material presents virtually the only source of direct evidence with regard to the essential issue of the insurance company's handling of the insured's claim. See id.; see also Brown v. Superior Court, 137 Ariz. 327, 670 P.2d 725, 734 (1983) ("The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this the need for the information in the file is not only substantial, but overwhelming."). Given the Legislature's recognition of the need to require that insurance companies deal fairly and act in good faith and the decision to provide insureds the right to institute first-party bad faith actions against their insurers, there is simply no logical or legally tenable basis upon which to deny access to the very information that is necessary to advance such action but also necessary to fairly evaluate the allegations *1129 of bad faithinformation to which they would have unfettered access in the third-party bad faith context. See Marsillo v. Nat'l Surety Corp. (In re Bergeson), 112 F.R.D. 692 (D.Mont.1986); Joyner v. Continental Ins. Cos., 101 F.R.D. 414 (S.D.Ga.1983); APL Corp. v. Aetna Cas. & Sur. Co., 91 F.R.D. 10 (D.Md.1980); United Servs. Auto. Ass'n v. Werley, 526 P.2d 28 (Alaska 1974); Cigna-INA/Aetna v. Hagerman-Shambaugh, 473 N.E.2d 1033 (Ind.Ct.App.1985). We conclude that it is necessary to recede from our decision in Kujawa because it has unnecessarily produced the application of artificial and disparate discovery rules to first- and third-party bad faith actions. We now agree with the analytical approach of the court in Fidelity & Casualty Insurance Co. of New York v. Taylor, 525 So.2d 908 (Fla. 3d DCA 1987), which explained, in pertinent part:
In a "first-party" action against an insurance carrier founded upon section 624.155(1)(b), which affirmatively creates a company duty to its insured to act in good faith in its dealings under the policy, liability is based upon the carrier's conduct in processing and paying a given claim. Thus, the action is totally unlike an ordinary "insured vs. insurer" action brought only under the policy, in which the carrier's claim file is deemed not producible essentially because its contents are not relevant to the only issues involved, those of coverage and damages ...
In contrast, a case like this one is totally indistinguishable from the familiar "bad faith" failure to settle or defend a third-party's action against a liability carrier's insureds. In those cases, like this one, the pertinent issue is the manner in which the company has handled the suit including its consideration of the advice of counsel so as to discharge its mandated duty of good faith. Virtually the only source of information on these questions is the claim file itself. Accordingly... it has been consistently held in our state that a claim file is subject to production in such an action.
In our view, because the pertinent issues are the same, there is no basis for distinguishing between types of "bad faith" insurance cases with respect to the present question. We therefore hold, as does the substantial weight of authority elsewhere on the question, that the claim file is and was properly held producible in this first-party case.
Id. at 909-10 (citations and footnotes omitted) (emphasis added).
We conclude that the better rule is recognition of the Legislature's mandate that the insurer's good faith obligation to process claims establishes a similar relationship with the insured requiring fair dealing, as has arisen in the third-party context, thus making the claim processing type file material discoverable under a claim for first-party bad faith just as with third-party actions. There simply is no basis upon which to distinguish between first- and third-party cases with regard to the rationale of the discoverability of the claim file type material. See Marsillo v. Nat'l Surety Corp. (In re Bergeson), 112 F.R.D. 692 (D.Mont.1986); Joyner v. Continental Ins. Cos., 101 F.R.D. 414 (S.D.Ga.1983); APL Corp. v. Aetna Casualty & Sur. Co., 91 F.R.D. 10 (D.Md.1980); United Servs. Auto. Ass'n v. Werley, 526 P.2d 28 (Alaska 1974); Brown v. Superior Court, 137 Ariz. 327, 670 P.2d 725 (1983); CIGNA-INA/Aetna v. Hagerman-Shambaugh, 473 N.E.2d 1033 (Ind.Ct.App.1985).
Consistent with the analysis outlined, we hold that in connection with evaluating the obligation to process claims in good faith under section 624.155, all materials, *1130 including documents, memoranda, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability, or damages, should also be produced in a first-party bad faith action. Further, all such materials prepared after the resolution of the underlying disputed matter and initiation of the bad faith action may be subject to production upon a showing of good cause or pursuant to an order of the court following an in-camera inspection. See Fla. R. Civ. Pro. 1.280(b), 1.350; Fla. Farm Bureau Gen. Ins. Co. v. Copertino, 810 So.2d 1076, 1079 (Fla. 4th DCA 2002). However, we caution that where the coverage and bad faith actions are initiated simultaneously, the courts should employ existing tools, such as the abatement of actions and in-camera inspection, to ensure full and fair discovery in both causes of action.[3] In no event should parties be permitted to undermine the plain meaning, spirit, and intent of the Legislature's mandate or this pronouncement by attempting to shield documents that pertain to the processing or litigation of the underlying claim by merely asserting that such documents were prepared in anticipation of litigation of the bad faith action. Obviously, files are opened routinely in the insurance business when claims are presented and that type of material should contain an accurate record of the manner in which the matter has been processed. In the same vein, litigants who choose to file both actions simultaneously must recognize that certain documentation relevant to the bad faith action may not be available for discovery until after resolution of the underlying matter. See Old Republic Nat'l Title Ins. Co. v. HomeAmerican Credit, Inc., 844 So.2d 818, 819 (Fla. 5th DCA 2003) (holding that a party is not entitled to discovery of an insurer's claim file in an action for insurance benefits combined with bad faith until the insurer's obligation to provide coverage has been established); Allstate Ins. Co. v. Shupack, 335 So.2d 620, 621 (Fla. 3d DCA 1976) (same). However, when the underlying claim for benefits has been resolved, all files pertaining to the underlying dispute which produced the alleged bad faith are discoverable as in traditional common law third-party bad faith cases for failure to settle third-party claims.
Because we recede from Kujawa, our determination essentially eliminates the basis of the discovery dispute and the issue giving rise to the conflict between the decision below and the multiple decisions of other district courts of appeal pertaining to when work product privilege attaches to shield documents from production in this context. In the present case, we determine that the district court was correct in affirming the trial court's decision to compel the production of Cobb's January 7 statement; the computer diaries and entries from the date Ruiz reported the accident on December 28, 1996, through January 10, 1997; and an internal memorandum from Mary Jidy to her boss dated January 7, 1997. See Ruiz, 780 So.2d at 240. We have reservations, however, with regard to the balance of the district court's determination, which reversed the trial court's decision to compel the production of other documents requested by the Ruizes, and concluded that such other documents "were prepared in *1131 anticipation of litigation and are protected from discovery." Id. at 241. Our review of the record reveals that such documents included handwritten notes evaluating coverage issues, internal letters and memoranda drafted in September of 1997 regarding coverage issues, and other items that do appear to be relevant, discoverable, not entitled to protection, and to pertain to Allstate's conduct with regard to the coverage dispute. While we remand to the district court for a careful review of each document requested in light of this holding, such documentation would appear to be freely discoverable in the bad faith action. In accordance with our decision today, work product protection that may otherwise be afforded to documents prepared in anticipation of litigation of the underlying coverage dispute does not automatically operate to protect such documents from discovery in the ensuing, or accompanying, bad faith action.
In rendering this holding, we are mindful of the principle of stare decisis as "provid[ing] stability to the law and to the society governed by that law." State v. Gray, 654 So.2d 552, 554 (Fla.1995); see also Delgado v. State, 776 So.2d 233, 241 (Fla.2000). However, despite the avowed importance of the principle of stare decisis, this Court has also acknowledged that the doctrine "does not command blind allegiance to precedent." Gray, 654 So.2d at 554; see also Haag v. State, 591 So.2d 614, 618 (Fla.1992) ("[S]tare decisis is not an ironclad and unwavering rule that the present always must bend to the voice of the past, however outmoded or meaningless that voice may have become."). This Court has departed from precedent to correct legally erroneous decisions, see Gray, 654 So.2d at 554, when such departure is "necessary to vindicate other principles of law or to remedy continued injustice," Haag, 591 So.2d at 618, and when an established rule of law has proven unacceptable or unworkable in practice. See Brown v. State, 719 So.2d 882, 890 (Fla.1998) (Wells, J., dissenting). This is the situation we address today.
Unfortunately, a portion of our decision in Kujawa legitimized a distinction between first- and third-party bad faith claims for discovery purposes, despite the fact that enactment of the section 624.155 duty of good faith and fair dealing eliminated any basis for any such discrimination. Since that time, litigants in first- and third-party bad faith actions have at times been subject to unjustifiably different treatment that has impinged upon the ability of first-party bad faith litigants to fully and fairly prosecute their causes of action or judges and juries to render properly informed decisions. For these reasons, we believe that a portion of our decision in Kujawa is both legally and practically untenable, and that receding from that decision does not offend the principle of stare decisis.

CONCLUSION
For the foregoing reasons, we quash the decision of the district court and remand the case for further consideration consistent with the principles articulated herein. We also clarify and, to the extent necessary, recede from our decision in Kujawa as explained herein and adopt the rule of law articulated within this decision for addressing the discoverability of documents in first-party bad faith actions.
It is so ordered.
PARIENTE, C.J., and ANSTEAD and QUINCE, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion, in which BELL, J., concurs.
CANTERO, J., did not participate.
*1132 WELLS, J., concurring in part and dissenting in part.
I concur in the majority's decision to quash the decision of the district court. I emphasize that the only issue being decided in this case is the discovery of work product in the claims file pertaining to the underlying insurance claim. I dissent to receding from this Court's decision in Kujawa v. Manhattan National Life Insurance Co., 541 So.2d 1168 (Fla.1989). I do not join the majority opinion. In my opinion, there continue to be distinctions for purposes of discovery between first-party and third-party bad faith actions. Therefore, I find substantial parts of the majority opinion to be incorrect.
Moreover, in respect to work product, I would draw a clear distinction between materials prepared or developed in anticipation of the lawsuit on the policy of insurance and documents or materials prepared or developed in anticipation of a bad faith claim. I would hold that until the lawsuit on the policy is completed, the materials prepared or developed in anticipation of or by reason of that lawsuit are not discoverable. Once that lawsuit is completed, I would hold that the documents prepared or developed in anticipation of or by reason of that lawsuit are no longer work product and are discoverable. I recognize that the majority says that the bad faith claim can be abated until the claim on the policy is completed, but I would go this extra step.
There is a difference between a third-party bad faith action and a first-party bad faith action which continues. That difference is that in the claim on the policy, the insured and insurers are in an adversarial relationship, as this Court stated in Kujawa. The insurer must have the right to defend the claim without work product of the attorney for the insurer being subject to discovery while the claim remains pending. The most direct way to do this is to not allow discovery in a bad faith lawsuit of the insurer's file until the claim on the policy is completed. Once it is completed, then the entire file of the insurer is discoverable over the objection of work product. Again, I am only dealing with material which is covered by work-product immunity from discovery.
Therefore, since the claim on the policy in this case was completed, I would direct that the documents be produced over the work product objection. By this analysis, the distinction in the district court opinion between "in anticipation of litigation" and "substantial and imminent" is moot.
BELL, J., concurs.
NOTES
[1] While our decision in Laforet provides an historical explanation of the distinctions between first- and third-party bad faith actions, the rules of law articulated therein are not grounded upon such distinctions, and are therefore not affected by our decision today.
[2] We note that previous actions of this Court limiting the relief afforded under section 624.155 based upon distinctions between first- and third-party claims have been rebuked by the Legislature. See § 627.727(10), Fla. Stat. (Supp.1992) (superseding McLeod v. Continental Ins. Co., 591 So.2d 621 (Fla.1992), which had relied on the distinctions between first- and third-party causes of action to exclude excess judgment awards from the damages available in first-party bad faith actions in the uninsured motorist context).
[3] Similarly, the potential for abatement of simultaneously filed claims answers the concerns voiced by Allstate that discovery in the instant bad faith action would unfairly advantage the Ruizes in the accompanying negligence claim against Paul Cobb and vicarious liability claim against Allstate Insurance.