**Allan NOWAK, Plaintiff,**

v.

**LEXINGTON INSURANCE COMPANY, Defendant.**

**No. 05–21682CIV.**

United States District Court, S.D. Florida.

March 16, 2006.

Brenton N. Ver Ploeg, Esq., Miami, FL, for Plaintiff.

Marc J. Gutterman, Esq., Candise L. Shanbron, Esq., Hollywood, FL, for Defendant.

## *ORDER ON PENDING DISCOVERY MOTIONS RE: ATTORNEY– CLIENT PRIVILEGE*

SIMONTON, United States Magistrate Judge.

Presently pending before the Court are Plaintiff's Omnibus Motion To Compel Defendant To Provide Documents Responsive To Plaintiff's First Request For Production and Better Responses To Plaintiff's First Set of Interrogatories (DE # 21) and Defendant's Motion For Protective Order

(DE # 35). These motions are referred to the undersigned Magistrate Judge (DE # 31). A hearing was held on March 2, 2006, at which time the undersigned ruled, based on *Allstate Indemnity Co. v. Ruiz*, 899 So.2d 1121 (Fla.2005), that Defendant Lexington Insurance Co. could not assert the attorney-client privilege with respect to discovery sought during the time prior to resolution of the underlying insurance claim in favor of Plaintiff Nowak. This Order incorporates the reasons set forth below, and further explains that decision. The remaining issues in the pending motions will be addressed in a separate order.

## I. BACKGROUND

Pursuant to Fla. Stat. § 624.155, Plaintiff has filed a one-count Complaint against its insurance carrier, Lexington, alleging statutory bad faith in connection with Lexington's denial of Plaintiff's claim for payment to compensate Plaintiff for the theft of certain covered artwork (DE # 1). Plaintiff alleges that Lexington "violated section 624.155(b)(1) by not attempting in good faith to settle Plaintiff's claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly towards Lexington's insured and with due regard for his interest" (DE # 1 at ¶ 23). In addition, Plaintiff alleges that Lexington violated six subsections of Fla. Stat. § 626.9541(1)(i) by:

a) Failing to adopt and implement standards for the proper investigation of claims;

b) Failing to acknowledge and act promptly upon communications with respect to claims;

c) Failing to promptly notify its insured of any additional information necessary for the processing of a claim;

d) Failing to clearly explain the nature of information it eventually requested and the reasons why such information was necessary;

e) Misrepresenting pertinent facts or insurance policy provisions relaying [sic] to the coverage at issue; and

f) Making one or more material misrepresentations to its insured with the purpose of effecting settlement of his claim on less favorable terms than those provided in his policy.

Plaintiff alleges that the theft of his artwork occurred on May 2, 2002, and that he timely filed a claim with Lexington. When Lexington failed to pay his claim, he filed a lawsuit. The case proceeded to trial, and the jury returned a verdict in favor of Plaintiff for $155,000.00. Lexington initially appealed, but dismissed its appeal on November 8, 2004. Ultimately, Lexington paid Plaintiff more than $500,000.00 for contractual damages, costs, and fees.

The present Complaint was filed thereafter. Plaintiff seeks damages, including punitive damages, in excess of $75,000.00, plus interest, attorneys' fees and costs. At the hearing on the above discovery motions, Plaintiff expressly stated that the only damages sought in this case are punitive damages.

In its Answer, Lexington admits the basic allegations concerning the issuance of the insurance policy, and the ultimate result of the underlying litigation. However, it denies that it had no legitimate grounds for claim denial, denies that it did not promptly pursue its investigation, and denies that it failed to meet its statutory obligations. In addition, Lexington denies that Plaintiffs satisfied the conditions precedent to asserting a claim under section 626.9451(1)(i), since the Civil Remedy Notice filed by Plaintiff only referenced section 624.144(1)(b)(1).[1] Lexington also as-

---

1. This issue is presently pending in Lexington's Motion to Dismiss or Alternatively, Motion for Partial Summary Judgment (DE # 30, filed 1/9/06).

serts seven affirmative defenses: that it acted fairly and honestly and with due regard for the best interests of Plaintiff and all Lexington policyholders during its investigation and evaluation of Plaintiff's claim; that it fully, fairly and timely investigated the loss; that it acted in compliance with its statutory duties to act in good faith with regard to the handling, investigation and evaluation of the claim; that it acted in compliance with the Florida Insurance Code; that Plaintiff has failed to sustain any actual or cognizable damages; that it is entitled to a set-off for any and all collateral sources paid or payable to Plaintiff; and that Plaintiff has only complied with conditions precedent to bringing a cause of action for first-party "bad faith" pursuant to section 624.155(1)(b)(1), and is barred from any cause of action for "bad faith." At the hearing, Lexington expressly disavowed any intent to rely on advice of counsel in support of its claim of good faith.

## II. *THE POSITIONS OF THE PARTIES*

Plaintiff contends that, in *Allstate Indemnity Co. v. Ruiz*, 899 So.2d 1121 (Fla. 2005), the Florida Supreme Court eliminated the attorney-client privilege as a shield from discovery between an insured pursuing punitive damages in a bad faith claim against its insurance company, with respect to matters that occurred prior to the resolution of the claim in favor of the insured. Plaintiff contends that the Florida Supreme Court abolished the distinction between third-party bad faith claims, in which the law was well-settled that the insurance company could not assert attorney-client privilege or work product protection with respect to discovery requests by its insured, and first-party bad faith claims, as to which, prior to *Ruiz*, the insurance company retained its attorney-client privilege and work-product protection.

Defendant Lexington acknowledges that *Ruiz* eliminated work product protection with respect to information sought by the insured, but claims that the insurance company retains its attorney-client privilege. Defendant acknowledges that there is no privilege in a third-party bad faith claim, but states that this is based on the relationship between the insured and insurance company, who have a community of interest during the litigation of the underlying claim. Defendant contends that there is no such community of interest between the insured and the insurance company in a first-party bad faith claim since they are adversaries in the underlying case. Despite the language in *Ruiz* which states there should be no difference between the scope of discovery in a first-party bad faith action and a third-party bad faith action, Defendant claims that the issues before the Court in *Ruiz* involved only the claim of work product protection, and that the decision should not be extended beyond that. Defendant Lexington states that it has not asserted work-product protection as a basis for withholding discovery, and that its claim of attorney-client privilege should be sustained.

## III. *THE DISCOVERY REQUESTS AT ISSUE*

A. *Plaintiff's Omnibus Motion to Compel Defendant to Provide Documents Responsive to Plaintiff's First Request for Production, and Better Responses to Plaintiff's First Set of Interrogatories (De # 21)*

Plaintiff has identified the following four categories of discovery as to which it seeks production:

1. Lexington's handling of Plaintiff's insurance claim and/or the coverage litigation (Requests to Produce 1–4, 7–8, 11–14, 20, 36–37)

2. The people and entities that handled Plaintiff's insurance claim and/or the coverage litigation (Interrogatories 2, 3 and 7; Request to Produce 10, 18)

3. Lexington's claims handling practices and procedures (Interrogatories 5 and 6; Requests to Produce 9, 15, 16, 17, 19, 21–30, 33, 34, 38)

4. Lexington's structure, interrelationships, and organization (Requests to Produce 5–7, 31–32, 35).

(DE # 21 at 3).

Lexington has objected to the production of various documents on the grounds, *inter alia,* that they are protected from disclosure by the attorney-client privilege (DE # 42 at 5–7).

The specific discovery requests, responses and privilege logs at issue are attached to the motion; however, for purposes of this Order, the specific requests are not material.[2] There is no dispute that the materials as to which privilege has been asserted are within the scope of the privilege, if one exists, and the parties have made no distinction among these documents.

B. *MOTION FOR PROTECTIVE ORDER (DE # 35)*

Defendant's Motion for Protective Order seeks to limit the areas of inquiry with respect to the deposition of Sandra Carter, as the corporate representative of Defendant under Fed.R.Civ.P. 30(b)(6). The motion was filed on the date of the deposition, although Defendant's objections had been made known to Plaintiff long before that date. Plaintiff claims initially that the motion should be denied as untimely since it was filed on the date of the deposition; and that it should be denied as moot since the deposition has already occurred (DE # 54 at 2). However, at the hearing, Plaintiff receded somewhat from this position since the witness refused to answer questions within the scope of these areas, and those matters are presently before the Court in Plaintiff's Motion to Compel (DE # 63), which was filed only shortly before the hearing, and was not yet ripe at that time.

The undersigned has determined that the best course of action is to consider the issue of attorney-client privilege raised in the motion, and to consider the remaining objections in the context of the motion to compel.

Lexington lists the following areas that it objects to on the grounds that inquiry into these areas violates its attorney-client privilege:

15. The negotiations leading to the engagement of the law firm of Powers, McNalis, Torres and Teebagy (or any previous or subsequent entity) to perform claim or litigation services on Lexington's behalf and/or on the behalf of any of its affiliates (including any notes taken during or after the negotiations in

---

**2.** With respect to its challenge to Defendant's assertion of attorney-client privilege, Plaintiff has identified Requests to Produce 1–4, 7–8, 11, 13–14, 20, 36–37, copies of which are attached as Exhibit C to the Motion. The responses to these requests, except for page 3 (which is missing), are attached as Exhibit F to the motion. A privilege log, which was provided as part of the initial disclosure made pursuant to Fed.R.Civ.P. 26, is attached as Exhibit G to the motion. Plaintiff has also filed copies of discovery sought from non-party witnesses Powers, McNalis, Torres & Teebagy, the law firm which served as counsel for Defendant in the underlying case; and from CJW & Associates, the third-party insurance adjuster that handled the claim for Defendant, and the privilege log asserted with respect to those subpoenas. An additional privilege log for documents withheld by Powers, McNalis, Torres & Teebagy was filed later (DE # 56). Plaintiff states that its Omnibus Motion also responds to the subpoenas issued to these non-party witnesses, on whose behalf Lexington raised objections (DE # 21 at n. 1). Lexington does not challenge this procedure.

connection with the hiring of Powers McNalis, and the reasons for such engagement).

16. The nature and content of solicitation(s) provided to Lexington by Powers McNalis in connection with the possible engagement of its services, including the date, location and contents of any verbal contacts between Powers McNalis and Lexington.

17. The substance and content of all performance reviews/audits of Powers McNalis undertaken by or on behalf of Lexington from 2000 through the present.

The parties have adopted by reference the arguments regarding the viability of the attorney-client privilege that were made in connection with the Omnibus Motion to Compel (DE # 25), and therefore the same ruling applies with respect to the deposition of the corporate representative. Thus, the corporate representative may not rely on the attorney-client privilege as a basis for refusing to answer questions regarding the coverage determination and pursuit of the underlying litigation, with respect to the time during which the underlying action was pending.

## IV. *LEGAL ANALYSIS*

The determination of whether the attorney-client privilege applies in a first-party bad faith action brought under Fla. Stat. § 624.155 to communications made prior to the resolution of the underlying coverage claim is governed by the interpretation of the Florida Supreme Court's opinion in *Allstate Indem. Co. v. Ruiz*, 899 So.2d 1121 (Fla.2005). Both parties agree that, in *Ruiz*, the Florida Supreme Court expressly receded from its prior contrary decision in *Kujawa v. Manhattan Nat'l Life Ins. Co.*, 541 So.2d 1168 (1989), and abolished the work-product protection doctrine under these circumstances. Plaintiff contends that the Court also abolished the

attorney-client privilege; Defendant contends that the Court did not address that issue, and that the prior opinion in *Kujawa* remains good law to the extent that it held that the attorney-client privilege applies. For the reasons stated below, the undersigned concurs with Plaintiff.

Although I agree with Defendant that the narrow issue before the Florida Supreme Court only involved the issue of work product doctrine, it is apparent from the opinion that the Court intended to abolish the attorney-client privilege as well as work product immunity from discovery. A close examination of the context in which ·*Ruiz* arose, as well as the prior precedent, is necessary to explain this conclusion. In *Ruiz*, the Florida Supreme Court reviewed a decision of the Fourth District Court of Appeals concerning the application of the work product doctrine to shield documents from discovery in the context of a first-party insurance bad faith claim. The basis for the exercise of that jurisdiction was a conflict between the underlying *Ruiz* decision and that of other Florida District Courts of Appeals concerning a particular element of the work product immunity; specifically, whether the doctrine "attaches to materials created when litigation is 'substantial and imminent' as held in *Ruiz* [by the Fourth District Court of Appeals], as opposed to when legal action is 'merely foreseeable,' as held in the conflict cases ...." 899 So.2d at 1122. There was no issue in the underlying *Ruiz* case concerning the applicability of the attorney-client privilege; nor could there be since the Florida Supreme Court had unequivocally held in *Kujawa* that the attorney-client privilege as well as work product immunity from discovery applied to first-party bad faith causes of action brought under Fla. Stat. § 624.155. Thus, after *Kujawa*, unless a lower court chose to disregard the Florida Supreme Court's pronouncement of the

law, the only issues to be litigated concerned the scope of work product protection.[3]

In *Ruiz*, the Florida Supreme Court began its analysis by comparing the nature of third-party bad faith actions and first-party bad faith actions, and concluded that there was no basis for any distinction with respect to the scope of permissible discovery. (In the case at bar, the parties agree that in a third-party bad faith action, the attorney-client privilege does not apply with respect to discovery at issue here.) The Florida Supreme Court stated:

> [W]e reconsider the wisdom of our decision in *Kujawa* and a fresh look at such decision convinces us that any distinction between first- and third-party bad faith actions with regard to discovery purposes is unjustified and without support under section 624.155 and creates an overly formalistic distinction between substantively identical claims.

899 So.2d at 1128. The Court then expressly receded from its decision in *Kujawa* "because it [had] unnecessarily produced the application of artificial and disparate discovery rules to first- and third-party bad faith actions." *Ruiz*, 899 So.2d at 1129. In explaining its decision, the Court quoted extensively from the decision of the Third District Court of Appeals in *Fid. & Cas. Ins. Co. of New York v. Taylor*, 525 So.2d 908 (Fla.3d Dist.Ct.App.1987), which *Kujawa* had overruled, and in which the Third District Court of Appeals had expressly rejected the insurer's claims of both work product protection and attorney-client privilege with respect to communications concerning bad faith dealing, including correspondence between the insurance company and its attorneys, 525 So.2d at 909–10 and nn. 2, 4–5.

The *Ruiz* Court then summarized its holding as follows:

> Consistent with the analysis outlined, we hold that in connection with evaluating the obligation to process claims in good faith under section 624.155, all materials, including documents, memoranda, and letters, contained in the underlying claim and related litigation file material that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability, or damages, should also be produced in a first-party bad faith action. Further, all such materials prepared after the resolution of the underlying disputed matter and initiation of the bad faith action may be subject to production upon a showing of good cause or pursuant to an order of the court following an in-camera inspection. . . . [W]hen the underlying claim for benefits has been resolved, all files pertaining to the underlying dispute which produced the alleged bad faith are discoverable as in traditional common law third-party bad faith cases for failure to settle third-party claims.

899 So.2d at 1130.

The rationale behind this ruling was the decision of the Legislature which mandated that insurance companies act in good faith and deal fairly with its insureds, regardless of the context in which coverage claims were presented. "Given ... the decision to provide insured the right to

---

**3.** In addition, the Court of Appeals in *Ruiz* did not address the issue of *whether* the work product protection applies to claims files, since *Kujawa* had unequivocally held that it does-the issue was limited to how to apply that doctrine; *i.e., when* the work product privilege attached. Although this narrow issue was the basis upon which the Florida Supreme Court granted *certiorari* review based on conflict among the District Courts of Appeals, this narrow issue was effectively eliminated by the decision of the Florida Supreme Court to recede from its decision in *Kujawa,* and render a much broader holding.

institute first-party bad faith actions against their insurers, there is simply no logical or legally tenable basis upon which to deny access to the very information that is necessary to advance such action but also necessary to fairly evaluate the allegations of bad faith—information to which they would have unfettered access in the third-party bad faith context." *Id.* at 1128–29. In effect, the same fiduciary duty between the insured and insurer which permitted common law bad faith actions as to third-party claims, and which led to the determination that, as to its insured, an insurance company could not invoke the work-product or attorney-client privilege, also leads to the determination that the same principles apply with respect to the statutorily created fiduciary duty which permits a first-party bad faith action.

Although the Court was careful to limit its rejection of *Kujawa* to the "portion of our decision in *Kujawa* [that] legitimized a distinction between first- and third-party bad faith claims for discovery purposes," and it is unclear which portion of *Kujawa* remains viable, this limitation does not affect the issues raised in the case at bar. The parties here have not drawn any distinctions with respect to particular documents for which the privilege has been claimed; and Defendant has not claimed that the attorney-client privilege would not apply if this were a third-party bad faith action. The distinction which Defendant seeks to draw—that the attorney-client privilege should survive in a first-party bad faith action because the insured and insurance company are adversaries from the inception of the underlying coverage dispute; whereas, in a third-party dispute the insured and insurance company are aligned against the plaintiff in the underlying coverage dispute—is not tenable under the rationale of *Ruiz.*[4]

Therefore, the undersigned concludes that, as to its insured in this first-party bad faith action, Defendant may not assert the attorney-client privilege with respect to documents and testimony which are relevant to the issue of whether Defendant acted in good faith, including the advice given by counsel as to the handling of this claim, the coverage determination, and litigation of the coverage dispute until its resolution.

After a careful review of the record, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Omnibus Motion To Compel Defendant To Provide Documents Responsive To Plaintiff's First Request For Production and Better Responses To Plaintiff's First Set of Interrogatories **(DE # 21)** is **GRANTED**, with respect to the items withheld on the basis of attorney-client privilege; and Defendant's Motion For Protective Order **(DE # 35)** is **DENIED** to the extent it seeks to invoke the attorney-client privilege, as set forth in the body of this Order. All documents covered by this Order must be produced on or before March 27, 2006.

---

4. The undersigned notes that only other decision located on this issue reached the same result. *Cozort v. State Farm Mut. Automobile Ins. Co.*, 233 F.R.D. 674, 2005 WL 3832694 at *1–2 (M.D.Fla.2005) (Attached as Exhibit H to DE # 21).