FARMER, J.
 

 In this sequel to our decision in
 
 Merkle v. Health Options,
 
 940 So.2d 1190 (Fla. 4th DCA 2006), one of the Health Maintenance Organizations (HMO) involved in that as yet unresolved dispute seeks to avoid producing certain documents under the theory they are protected as trial preparation materials.
 
 See
 
 Fla. R. Civ. P. 1.280(b)(3). The trial judge reviewed the documents
 
 in camera
 
 and found them unprotected as work product. We agree and deny the petition for certiorari.
 

 The HMO misconstrues
 
 Southern Bell Telephone and Telegraph Company v. Deason,
 
 632 So.2d 1377 (Fla.1994). It argues that
 
 Deason
 
 stands for a general rule to the effect that a mere routine request for information by a regulatory agency justifies presumptive work product protection for any document on which the regulated industry company’s lawyer has cast an eye. We do not think
 
 Deason
 
 can be fairly interpreted that way.
 

 Deason
 
 involved regulatory disciplinary litigation against Southern Bell already well under way when its subject documents were generated. At the end of a prior informal investigation, the Public Service Commission (PSC) had concluded there was reason to believe that Southern Bell had violated PSC rules. The PSC had then given Southern Bell formal notice that an official investigation would now be undertaken and consolidated the formal accusatory investigation with the company’s own pending case before the PSC seeking to raise the rates charged its customers.
 
 [1]
 
 In short, from that point on the company was then engaged in full fledged administrative litigation over possible disciplinary action.
 

 Simply put, there is nothing remotely similar in this case. Here the HMO adopted a policy of reimbursing providers of emergency medical services not under contract with the HMO at a rate of 120% of the Medicare rate. Some of these non-contract providers objected, arguing they are entitled by § 641.513(5)
 
 [2]
 
 to be paid at “the usual and customary charges for similar services in the community” of service. The HMO arranged for other HMOs to join with it in hiring a private consulting company specializing in provider reimbursement.
 

 The Florida Agency for Health Care Administration (AHCA), which regulates some aspects of HMO operations, asked
 
 *1182
 
 the HMO to explain how its policy complied with the statute. The HMO consulted with this consulting firm and other HMOs to review its response before submitting it to AHCA. Several documents were prepared by the HMO and its consulting firm analyzing various drafts of the response. Suffice it to say, these documents contain discussions as to how the HMOs arrived at the rates they were paying non-contract providers. The HMO then submitted the response to AHCA. During this time, AHCA worked with both the HMOs and the providers to attempt an informal resolution of the rate dispute. After considering the response, AHCA determined that it had no jurisdiction over the matter. AHCA’s role is best described as an attempt to mediate the dispute. Plainly, when the documents were created AHCA was not considering an adversarial disciplinary proceeding on the matter.
 

 Following AHCA’s decision, some of the non-contract providers brought this class action suit against the HMO for a declaratory judgment that under the statute they were entitled to reimbursement at a higher rate and to recover the difference. In our prior decision in this dispute, we held that § 641.513(5) affords the providers a private right of action against the HMOs. 940 So.2d at 1196-1200. The providers then requested the production of the documents now under contention in discovery. The HMO objected, claiming the work product privilege. The trial judge conducted an
 
 in camera
 
 review of 44 documents listed on a privilege log and concluded they were not protected by the work product privilege.
 

 We have reviewed these documents. We agree with the trial judge’s reading of them. They lack the essential ingredient necessary to make any brand of work product claim even arguable in this case — namely, a purpose other than ordinary business use and an attorney’s direct involvement in their creation or maintenance in connection with reasonably anticipated specific litigation.
 

 In the
 
 Deason
 
 discussion of the work product privilege, the Court stated that the PSC rationale for rejecting the work product claim was that the Southern Bell documents “were created for a business purpose” and thus unprotected. 632 So.2d at 1384. The PSC had reasoned that Southern Bell “had an independent business need to perform its own internal investigation.”
 
 Id.
 
 Southern Bell argued that “in light of the allegations of impropriety against it, the company had a legal motive for collecting the information now being requested for production.”
 
 Id.
 
 In partially rejecting the PSC decision, the court found that the internal audits, resulting in the documents sought to be discovered by the Public Counsel, “were conducted at the request of counsel in direct response to the PSC’s investigation.”
 
 Id.
 

 To be sure, the
 
 Deason
 
 Court identified several separate categories of documents claimed to be protected as work product. Yet in spite of on-going disciplinary agency action concerning alleged violations of regulatory statutes and rules, it is important to note the Florida Supreme Court ultimately found only some of the documents protected. The documents held protected in
 
 Deason
 
 all had these attributes:
 

 A. they were created by the corporation’s lawyer for litigation already taking place; or,
 

 B. they were created at the direction of the corporation’s lawyer for the litigation already taking place; and
 

 C. they were not created and used initially in ordinary business activities.
 

 Not a single one of these attributes can be found in this case.
 

 In
 
 Upjohn Company v. United States,
 
 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584
 
 *1183
 
 (1981), the Court extended federal work product protection to attorneys charged with undertaking voluntary internal corporate investigations and compliance measures when such investigations necessarily involve a significant legal component. But in allowing this extension, the Court required the proponent of the work product claim to make four showings:
 

 (1) the communications have to be made by corporate employees to corporate counsel, including outside counsel, in order to obtain legal advice;
 

 (2)the board of directors or corporate leadership must direct the inquiry;
 

 (8) the information sought must concern matters within the duties of corporate employees, who must understand that their information is being sought as a basis for legal advice and possible legal action; and
 

 (4) the corporation must treat the communications as confidential throughout the investigation, with interviews being conducted in private and notes memorialized in confidential documents circulated to only a minimum number of people.
 

 449 U.S. at 394-95, 101 S.Ct. 677. Here there is no showing as to three of these requirements. AHCA merely asked the HMO to explain its payment rates for non-contract providers. There was no investigation, formal or informal. AHCA simply wanted to know how the HMO arrived at its non-contract rate. When it received the HMO’s response, AHCA closed the matter, saying it had no jurisdiction.
 
 [3]
 
 There was no suggestion of any government investigation for fraud, as was the case in
 
 Deason.
 
 There was no basis to anticipate adverse agency action.
 

 The principal business function of an HMO is to act as a third-party payor to providers of health care services for participants who pay fees for this service. The mere fact that AHCA requests a rate explanation from an HMO is about as routine as this business gets. The mere fact that an HMO consults with a specialist in provider reimbursement is also routine.
 
 [4]
 
 Explaining rates to government agencies concerned with reimbursement to providers of health care services is an unending business activity of third-party payors, like these HMOs. If these 44 documents are the kind of materials falling within work product protection, then it is hard to imagine an HMO document that could not be deemed protected.
 

 In
 
 Hickman v. Taylor,
 
 329 U.S. 495, 67 S.Ct 385, 91 L.Ed. 451 (1947) — the foundation on which all work product analysis begins — the documents in question arose
 
 after the claim had already accrued
 
 but before suit was filed.
 
 See
 
 329 U.S. at 504, 67 S.Ct. 385 (“Here production was sought of documents prepared by a party’s attorney after the claim has arisen.”). Similarly in
 
 Deason,
 
 the protected documents arose after the PSC had begun its formal investigation for disciplinary action.
 
 See
 
 632 So.2d at 1384 (“two months after Public Counsel requested the PSC to investigate Southern Bell’s alleged improprieties, Southern Bell’s counsel requested the audit department to review and analyze certain data regarding [specifically described]
 
 *1184
 
 activity. The analyses of this data are known as the investigative audits”). Thus in both
 
 Hickman
 
 and
 
 Deason
 
 the documents in question originated after accrual of a claim or administrative violation.
 

 When a claim has already accrued, it may be objectively reasonable to anticipate litigation even though suit has not yet been filed. In that circumstance, a party could reasonably claim materials were prepared “in anticipation of litigation.”
 
 Hickman
 
 and
 
 Deason
 
 afford work product protection only for materials prepared in connection with an occurrence or circumstance reasonably indicating prospective litigation over a specific matter. Neither
 
 Hickman
 
 nor
 
 Deason
 
 affords any basis to transform work product protection into a general shield for materials routinely prepared in the ordinary course of business.
 

 The operative terminology in the applicable rule is “prepared in anticipation of litigation.” Fla. R. Civ. P. 1.280(b)(3). Our decision in
 
 Cotton States Mutual Ins. Co.,
 
 444 So.2d 595 (Fla. 4th DCA 1984), described this work product protection thus:
 

 “The work product privilege attaches to statements and materials prepared by a party’s investigator or insurer only if these were prepared in contemplation of litigation.
 
 Mere likelihood of litigation does not satisfy this qualification.”
 
 [e.s., C.O.]
 

 444 So.2d at 596. We think the highlighted sentence was simply an attempt by this court to emphasize that the mere
 
 general
 
 likelihood of litigation in the corporation’s ordinary conduct of business is not enough for a claim of work product protection. There must be some specific matter reasonably indicating litigation beyond the general business prospects of eventually being sued.
 

 Nevertheless, the quoted sentence from
 
 Cotton States
 
 is sometimes cited to us as a holding imposing a heightened requirement for all claims of work product protection in this district.
 
 See. e.g., Marshalls of MA Inc. v. Minsal,
 
 932 So.2d 444 (Fla. 3d DCA 2006). We hope to clarify
 
 Cotton States
 
 by pointing to its context.
 
 Cotton States
 
 concerned a claim by an insured that an insurance carrier had engaged in bad faith in regard to the handling and settlement of a claim arising under the liability policy. We call attention to the fact that, because of the fiduciary relationship between the insured and carrier, the carrier’s file developed during the handling of the claim could hardly be deemed protected from its own insured to whom it owed a fiduciary duty.
 
 [5]
 
 The carrier lacked any basis to claim a privilege of nondisclosure about the claim file in a later bad-faith suit. Properly understood,
 
 Cotton States
 
 is therefore well within
 
 Hickman
 
 and
 
 Deason.
 

 [6]
 

 ■While
 
 Cotton States
 
 was not intended to impose a heightened standard for all work product claims, we do recognize that claims of privilege or protection by eorpo-
 
 *1185
 
 rations are generally subject to stricter scrutiny.
 
 Deason,
 
 632 So.2d at 1383 (recognizing that “to minimize the threat of corporations cloaking information with the attorney-client privilege in order to avoid discovery, claims of the privilege in the corporate context will be subjected to a heightened level of scrutiny”).
 

 We must not forget that the work product doctrine was created as a
 
 litigation
 
 privilege. It was never meant to apply to ordinary, routine, business-as-usual communications. That obviously means that it was not intended to protect the general foreseeability of being sued in the course of business- — something HMOs routinely face. Hence we think, at a minimum, a claim of work product protection requires that
 
 a specific
 
 litigation matter can be reasonably anticipated as a result of an occurrence or circumstance — such as an act giving rise to the accrual of a cause of action. It was never designed to protect the normal business activities of an industry against general regulatory oversight and enforcement — outside of specific disciplinary action by the agency.
 

 The decision of the trial court denying a protective order in this case is well within the analytical framework of
 
 Deason
 
 and does not depart from the essential requirements of law. We leave it undisturbed.
 

 GROSS, C.J., and POLEN, J., concur.
 

 [1]
 

 . "In February 1991, the Office of Public Counsel petitioned the PSC to investigate allegations that Southern Bell falsified information regarding its compliance with Rules 25-4.070(2) and 25-4.110(2) ... requiring rebates for the untimely repair of telephone service. The PSC, which had already begun to informally investigate similar allegations against Southern Bell, formally initiated an investigation of Southern Bell in May 1991.” [c.o.] 632 So.2d at 1380.
 

 [2]
 

 . § 641.513(5), Fla. Stat. (2008).
 

 [3]
 

 .
 
 See Adventist Health System/Sunbelt Inc. v. Blue Cross and Blue Shield,
 
 934 So.2d 602, 604 n. 4 (Fla. 5th DCA 2006) (noting that AHCA responded to a dispute identical to the present one, stating that it " 'does not have specific rule making authority to determine what specific payment amounts would comply with section 641.513(5)(b)....' ”).
 

 [4]
 

 .
 
 See
 
 Stuart M. Gerson and Jennifer E. Gla-dieux,
 
 Advice Of Counsel: Eroding Confidentiality In Federal Health Care Law,
 
 51 Ala. L. Rev. 163, 183 (1999)(“Often non-attorneys, such as accountants or management consultants, perform these audits, and thus, the work product doctrine may not apply because the audit is more operational than legal in scope.”).
 

 [5]
 

 .
 
 See Allstate Indemnity Co. v. Ruiz,
 
 899 So.2d 1121, (Fla.2005) (recognizing duty of carrier to act in good faith toward insured in settlement of claim, that the relationship between insured and carrier is similar to attorney-client);
 
 State Farm Mut. Auto. Ins. Co. v. Laforet,
 
 658 So.2d 55, 58 (Fla.1995) ("Under liability policies ... insurance companies took on the obligation of defending the insured, which, in turn, made insureds dependent on the acts of the insurers; insurers had the power to settle and foreclose an insured’s exposure or to refuse to settle and leave the insured exposed to liability in excess of policy limits. This placed
 
 insurers in a fiduciary relationship with their insureds
 
 similar to that which exists between an attorney and client” [e.s., c.o.]).
 

 [6]
 

 . Contrarily, in
 
 Deason,
 
 some of the work product claims were proper because disciplinary litigation in that case was already well under way when the audits were done.