NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

WESTERBEKE CORPORATION,    )
    )
    Petitioner,    )
    )
v.    )    Case No. 2D16-5179
    )
MICHAEL ATHERTON; CARRIE    )
ATHERTON; MADIE ATHERTON and    )
QUINN ATHERTON; ROBERT    )
BERKSTRESSER; MARINEMAX, INC.;    )
MARINEMAX OF CENTRAL FLORIDA,    )
LLC; MARINEMAX CHARTER SERVICES, )
LLC; MARINEMAX INTERNATIONAL, LLC;)
MARINEMAX MOTOR YACHTS, LLC;    )
MARINEMAX MOTOR YACHTS, INC.;    )
MARINEMAX OF SARASOTA, LLC;    )
MARINEMAX SERVICES, INC.;    )
MARINEMAX OF SOUTHWEST FLORIDA, )
LLC; MARINEMAX YACHTS, LLC;    )
MARINEMAX EAST, INC.; MARINEMAX    )
OF JACKSONVILLE, INC.; MARINEMAX    )
REALTY, LLC; GULFWIND USA, LLC,    )
d/b/a MARINEMAX GULFWIND; BASSETT )
BOAT COMPANY, d/b/a MARINEMAX    )
BASSETT SEARAY; R.B. GROVE, INC.;    )
GEORGE and NANCY MEYER; BRIAN    )
MEYER; ANGELA MEYER; LOGAN    )
MEYER; BROOKS MEYER and ABRY    )
MEYER,    )
    )
    Respondents.    )
_____)

Opinion filed August 9, 2017.

Petition for Writ of Certiorari to the Circuit
Court for Hillsborough County; Rex Barbas,
Judge.

Lawrence E. Burkhalter of Weinberg,
Wheeler, Hudgins, Gunn & Dial, LLC, Miami,
for Petitioner.

Julie H. Littky-Rubin of Clark, Fountain,
La Vista, Prather, Keen & Littky-Rubin, LLP,
West Palm Beach, for Respondents Michael
Atherton; Carrie Atherton; Madie Atherton
and Quinn Atherton; and Brian Meyer.

Stuart C. Markman and Kristin A. Norse of
Kynes, Markman & Felman, P.A., Tampa,
for Respondents George Meyer and Nancy
Meyer.

No appearance for remaining Respondents.

MORRIS, Judge.

Westerbeke Corporation seeks certiorari review of a nonfinal order

denying Westerbeke's motion to compel the unwinding, or disassembling, of a piece of

a gas generator that was involved in a boat explosion and that is a key piece of

evidence in three personal injury and products liability lawsuits filed by the respondents.

Because the trial court applied the incorrect law to Westerbeke's motion to compel, we

grant the petition and quash the order.

### I. Background

The boat explosion occurred in May 2009, while several respondents were

onboard and operating the boat in Tampa Bay.[1]  Three separate lawsuits were filed

---

[1]The following respondents were on board:  Michael and Carrie Atherton
and their two children, Brian and Angela Meyer and their three children, and George
and Nancy Meyer.

based on injuries suffered during the explosion, and the lawsuits were consolidated for purposes of discovery only.[2] Westerbeke is the manufacturer of the gas generator, and newly installed component parts on the gas generator, that was operating on the boat at the time of the explosion. The respondents' theory with regard to Westerbeke's liability is that there was an internal short that caused a sparking event in the windings of the piece of the generator called the "stator," that the sparking event caused the explosion, and that the sparking event was due to manufacturing and design defects. The respondents and Westerbeke agree that there was a short, but they disagree as to when the short occurred and whether the short caused a sparking event in the stator.[3]

---

[2]Michael and Carrie Atherton, individually and on behalf of their two children, filed suit against twenty-three defendants, including Westerbeke and the owner of the boat, George Meyer. Brian and Angela Meyer, individually and on behalf of their three children, also filed suit against twenty-three defendants, including Westerbeke and the owner of the boat, George Meyer. George and Nancy Meyer filed suit against twenty-two defendants, including Westerbeke.

[3]At the first hearing on Westerbeke's motion to compel unwinding, Westerbeke's counsel explained the issue:

> [Respondents] rely on [the ohmmeter] short reading for their theory, but that is their entire basis for their theory that there was a short and then a spark, but an ohmmeter reading doesn't tell you anything about whether there was a spark. It doesn't tell you when it happened. It doesn't tell you where the short is. We just know there is presently in 2016, a short and there was a short in 2014, that's when it was first measured five years after the explosion, the boat sank, was submerged for 24 hours, towed in saltwater, stored outside for four years, obviously there's a lot of corrosion going on.
>
> . . . .
>
> And so the key is, when did this insulation failure— when did the short develop, and there's two possible scenarios. It either happened while the generator was powered, while it was on, on the day of the explosion. It either happened then or it happened when the generator was not powered. That's it. Those are the only two options. There's no between, that's it. If it was on, if the generator was powered, you've got current running through it and

Westerbeke sought to "unwind" or disassemble the stator to look for evidence of a spark or ignition source that caused the explosion. The respondents objected to unwinding the stator on the basis that it would not reveal any probative evidence and that it would destroy evidence and thus prejudice the respondents. The issue of the unwinding was considered at two separate hearings. At the first hearing on August 26, 2016, Westerbeke argued that the unwinding was necessary to see if the stator contains evidence of "sparking, burning, melting, [or] charring," which would indicate if the spark, or ignition source, came from the stator. Westerbeke stated that it did not seek to unwind the stator until it became aware that the respondents would be claiming that the ignition source was in the stator portion of the generator. It also argued that unwinding the stator would not harm the respondents' ability to prove their case because the respondents have thousands of photographs. Westerbeke also questioned "how [the jury's] touching and feeling this generator is going to prove anything" for the respondents. Last, Westerbeke argued that the relevant factors

there's a short and a spark, there is going to be physical evidence. You've got 170, 180 volts going through this generator, nothing to stop it. And so there's going to be significant physical damage. There's going to be charring, burning, melting of the copper wires of the slot liner. There's going to be melting on the iron laminations. It's significant. [Respondents] say that there was a microscopic arcing event. You'll—you've heard about that and that there's not going to be—or there may be potential evidence that's going to be destroyed when we unwind, but so far, we've seen no evidence when we've inspected the outside. We contend that even if it was a microscopic arcing event, which isn't possible based on science, there's still going to be evidence.

Later, counsel for Westerbeke stated that Westerbeke's theory was that the hot water heater was the ignition source because it was "non[-]marine grade," was "not ignition protected," had just been installed by the boat owner, and was used for the first time on the day of the explosion.

- 4 -

weighed in favor of the unwinding because the unwinding is relevant, reasonable, and necessary; there is no other way to do this; there are adequate safeguards in place; and the respondents' ability to present evidence is not hindered.

The respondents argued that the unwinding would not be probative because a spark in the stator would not necessarily leave any evidence. Thus, if no evidence of a spark was found, it would not affect the respondents' case. The respondents also argued that the unwinding would destroy evidence that they need to present to the jury:

> [W]e want to present to the jury . . . the generator back end in its current condition where you can show and demonstrate the short, where we can show them the flame patterns, where I can use this product candidly to take the depositions of their expert and respond to them, to rebut them, and to educate the jury about what happened in this.

The court asked whether videotaping could be conducted during the experts' depositions before the trial court allowed the unwinding, but respondents argued that they would lose their trial dates. Counsel for the Meyers mentioned getting an agreement in all three cases from Westerbeke and the issue of "collateral estoppel." He also argued that they would not be able to keep the first trial date. Westerbeke argued that the unwinding would not delay the trial. Westerbeke agreed that if no evidence of a spark is found as a result of the unwinding, the respondents are in no worse of a position, but under Westerbeke's theory, a spark would have left evidence in the stator.

The trial court was concerned about the issue of "collateral estoppel" and whether the unwinding would potentially harm the cases that had not yet been set for trial. The trial court indicated it wanted to treat all three cases similarly and that an agreement would be necessary before the trial court would allow unwinding.

A second hearing was held on Westerbeke's motion to compel on October 26, 2016, and the trial court remained concerned that the respondents would be affected differently if the trial court allowed the unwinding. This was because the first trial—in the Athertons' case—was scheduled for April 2017 and the trial court was under the impression that the unwinding would not be completed by then and admissible at that first trial. Westerbeke's counsel did not understand how the unwinding "would have any adverse bearing on the subsequent cases if it's going to be applicable to all the cases." Counsel for the Meyers again mentioned the doctrine of collateral estoppel, saying that they would agree to the unwinding if Westerbeke was willing to accept the liability verdict in the Athertons' case and apply it to the remaining two cases. The trial court agreed and was concerned that if Westerbeke won in the Athertons' litigation, there would still be two more liability cases and the respondents would claim that the stator has been destroyed. Westerbeke then argued that the case should be bifurcated for liability. The trial court referred to collateral estoppel and asked Westerbeke if it would be willing to be bound by the liability determination in the first trial. If so, the trial court would consider granting the unwinding. The trial court denied the request for unwinding unless Westerbeke agreed to "be bound by whatever is the finding in regards to liability on the first trial as to all plaintiffs." Westerbeke stated that if it would be bound by the liability finding, the remaining respondents would also need to be bound by it. The Meyers' counsel objected to that.

Counsel for the Meyers also argued that the unwinding would be prejudicial. Westerbeke argued that several other pieces of evidence had been disassembled and destroyed and that the requested unwinding should not be treated

any differently.  Counsel for the Athertons argued that the unwinding is not necessary for Westerbeke's defense and that they had not shown that it would be probative.  He also contended that Westerbeke waited until the "9th hour" to request the unwinding.  The hearing ended with all parties understanding that the trial court had denied the motion to unwind.  The trial court entered an unelaborated order on November 7, 2016, simply denying Westerbeke's motion to compel unwinding.

### II. Analysis

In its petition for certiorari review, Westerbeke argues that the trial court departed from the essential requirements of law in denying its motion because the proposed unwinding is necessary to its defense as it is the only way the parties will be able to determine if there was a short in the stator at the time of the explosion.  It contends that if it is prevented from conducting the unwinding, its defense that the stator did not cause the explosion "is essentially eviscerated."

"A party seeking review of a pretrial discovery order must show that the trial court's order departed from the essential requirements of law and caused 'material injury to the petitioner throughout the remainder of the proceedings below, effectively leaving no adequate remedy on appeal.' "  Giacalone v. Helen Ellis Mem'l Hosp. Found., Inc., 8 So. 3d 1232, 1234 (Fla. 2d DCA 2009) (quoting Martin-Johnson, Inc. v. Savage, 509 So. 2d 1097, 1099 (Fla. 1987)).  Generally, certiorari is not available "to review orders denying discovery because in most cases the harm can be corrected on appeal."  Id. (citing State Farm Mut. Auto. Ins. Co. v. Peters, 611 So. 2d 597, 598 (Fla. 2d DCA 1993)).  But certiorari relief may be appropriate "when the requested discovery is relevant or is reasonably calculated to lead to the discovery of admissible evidence and

the order denying that discovery effectively eviscerates a party's claim, defense, or counterclaim." Id. (footnote omitted). "The harm in such cases is not remediable on appeal because there is no practical way to determine after judgment how the requested discovery would have affected the outcome of the proceedings." Id. at 1234-35.

Westerbeke's defense is that a spark did not occur in the stator and that the short that was detected in the stator occurred after the explosion when the boat was submerged underwater or left outside for years. Westerbeke contends that if a spark occurred in the stator during the operation of the boat, as the respondents claim it did, the components of the stator will have evidence of burning or charring. The only way to see whether such evidence is present is to unwind the stator. Therefore, the order denying the unwinding effectively eviscerates Westerbeke's defense to the respondents' claim, and any error is not remediable on appeal. Accordingly, certiorari relief is appropriate if the trial court departed from the essential requirements of the law.

A trial court departs from the essential requirements of the law if it applies the wrong law or legal standard. See State v. Veilleux, 859 So. 2d 1224, 1227-28 (Fla. 2d DCA 2003) (recognizing that the trial court's misapplication of the correct law does not warrant certiorari relief but that the focus should be on whether the trial court applied the correct law (quoting Ivey v. Allstate Ins. Co., 774 So. 2d 679, 682 (Fla. 2000))); City of Hialeah Gardens v. Miami-Dade Charter Found., Inc., 857 So. 2d 202, 203 (Fla. 3d DCA 2003) ("Our scope of review of the circuit court's decision is limited to determining whether the circuit court applied the correct law or legal standard, that is, whether it departed from the essential requirements of the law.").

Here, the trial court denied Westerbeke's motion to compel based on its understanding and application of collateral estoppel and how the unwinding of the stator would affect the three separate cases. The trial court seemed to believe that if it granted the unwinding, the second and third cases set for trial would be affected differently than the first case set for trial. It appears that the trial court denied the unwinding because the first case was already set for trial. But the cases had been consolidated for discovery purposes, the unwinding was requested in all three cases, and Westerbeke contended that the unwinding could occur before the first trial was scheduled to occur in April 2017.[4] The trial court applied the doctrine of collateral estoppel, but the doctrine of collateral estoppel is not applicable here because none of the cases has resulted in a final decision or judgment. See City of Oldsmar v. State, 790 So. 2d 1042, 1046 n.4 (Fla. 2001) (noting that collateral estoppel applies when an identical issue has already been litigated by the parties and determined in a contest that results in a final decision by a court).

In arguing the proper standard to apply to its motion to compel, Westerbeke relies on, as it did below, the federal case of Mirchandani v. Home Depot, U.S.A., Inc., 235 F.R.D. 611, 614 (D. Md. 2006). There, the district court set forth four factors to consider in whether to permit destructive testing of an item of evidence:

> 1) Whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) Whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) Whether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) Whether there are adequate safeguards to minimize

---

[4]We note that the April 2017 trial date in the first case was continued and that none of the three cases are currently set for trial.

> prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

Id. The respondents do not argue that Mirchandani is inapplicable; rather, they suggest that the trial court properly considered the Mirchandani standard and that Westerbeke failed to meet that standard. But it is clear from the record that the trial court did not apply the Mirchandani factors or otherwise consider the merits of Westerbeke's motion.

The Mirchandani case may provide guidance in determining whether Westerbeke should be permitted to unwind the stator; however, the Mirchandani case is not controlling law in the state of Florida. See Pignato v. Great W. Bank, 664 So. 2d 1011, 1015 (Fla. 4th DCA 1995) ("The rulings of lower federal courts are not binding on state courts, although they may be persuasive on a point of law. Only decisions of the United States Supreme Court are binding on the state courts of Florida." (citations omitted)). Thus, we cannot say that the trial court failed to apply "clearly established law" when it failed to apply the Mirchandani factors. See Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 890 (Fla. 2003) (holding that " 'clearly established law' can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law" as well as "an interpretation or application of a statute, a procedural rule, or a constitutional provision"); cf. Richardson v. State, 831 So. 2d 799, 802 (Fla. 2d DCA 2002) (denying petition for writ of certiorari because "trial court did not err by considering pertinent federal cases to analyze the issues that were presented"). Neither Westerbeke nor the respondents cite to controlling law regarding the inspection of evidence that would result in the destruction of that evidence.

The Florida law regarding discovery in general provides that a party in a civil case is entitled to discover evidence that is relevant to the subject matter of the

case and that is admissible or reasonably calculated to lead to admissible evidence. Fla. R. Civ. P. 1.280(b)(1); Allstate Ins. Co. v. Langston, 655 So. 2d 91, 94 (Fla. 1995). In addition, "[a]ny party may request any other party . . . to inspect and copy, test, or sample any tangible things that constitute or contain matters within the scope of rule 1.280(b) and that are in the possession, custody, or control of the party to whom the request is directed." Fla. R. Civ. P. 1.350(a)(2). "The discovery rules . . . confer broad discretion on the trial court to limit or prohibit discovery in order to 'protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' " Rasmussen v. S. Fla. Blood Serv., Inc., 500 So. 2d 533, 535 (Fla. 1987) (citing Fla. R. Civ. P. 1.280(c)). We conclude that the trial court departed from the essential requirements of the law in failing to apply the proper discovery standard and in applying instead the doctrine of collateral estoppel to Westerbeke's request for unwinding. See Nucci v. Nucci, 987 So. 2d 135, 139 (Fla. 2d DCA 2008) ("A failure to apply the correct standard for deciding a particular issue is a departure from the essential requirements of law." (citing Dusseau v. Metro. Dade Cty.Bd. of Cty. Comm'rs, 794 So. 2d 1270, 1275 (Fla. 2001))).

Accordingly, we grant Westerbeke's petition for writ of certiorari. The effect of our decision is that Westerbeke's motion to compel unwinding remains pending, and the trial court should consider the proper standard in further ruling on it. See id.

Petition granted; order quashed.


CASANUEVA and SILBERMAN, JJ., Concur.