DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

BRIDGETTE KESLER,

Petitioner,

v.

PROGRESSIVE SELECT INSURANCE COMPANY,

Respondent.

No. 2D2025-1038
_____

April 1, 2026

Petition for Writ of Certiorari from the Circuit Court for Pasco County;
Susan G. Barthle, Judge.

Tracy Raffles Gunn of Gunn Appellate Practice, P.A., Tampa, for
Petitioner.

Megan E. Alexander, Carlos G. Gomez and Olivia C. Lewis of Young, Bill,
Boles, Palmer, Duke & Thompson, P.A., Tampa, for Respondent.

SLEET, Judge.

In the underlying action, Bridgette Kesler has brought a first-person bad faith claim against her insurer, Progressive Select Insurance Company, stemming from a dispute over an uninsured/underinsured motorist (UM) claim for policy limits that she filed with Progressive but Progressive failed to pay. As part of the pretrial proceedings, Progressive took the deposition of Amy Catledge, the attorney who represented Kesler

in her pursuit of the UM claim. During Catledge's deposition, Progressive asked her about Kesler's willingness to settle the UM claim for less than policy limits and Catledge's evaluation of the claim. Catledge refused to answer based on attorney-client and work product privileges, and Progressive filed a motion to compel, which was granted by the trial court.

Kesler now seeks certiorari review of that order. Because it requires Catledge to testify about privileged communications with Kesler and implicitly finds that Kesler's filing of her bad faith action was itself a waiver of attorney-client and work product privileges, we grant Kesler's petition for certiorari and quash the order to the extent it requires Catledge to provide further deposition testimony.

On March 3, 2018, Kesler was injured by an underinsured driver operating a stolen vehicle. Her Progressive policy provided $200,000 in available UM coverage for the accident. Kesler timely notified Progressive of the accident and retained The Ruth Law Team. In August 2018 Progressive requested records related to the accident, Kesler's injuries, and any lost wages. Kesler provided medical records and medical bills totaling $67,000—$12,000 of which remained unpaid—and made a demand for settlement for the policy limits of $200,000. Progressive countered by offering Kesler $43,000, declaring the offer to be "three times the value of her medical bills."

Kesler rejected the offer and filed her UM action against Progressive on September 12, 2019. On October 31, 2019, while the UM action was pending, Kesler filed a civil remedy notice (CRN) with the Florida Department of Financial Services seeking payment of the policy limits.[1]

---

[1] "[A]n injured party may directly pursue a claim against its underinsured motorist carrier . . . without having to first resolve the

Kesler alleged that Progressive acted in bad faith pursuant to section 624.155(1)(b)1, Florida Statutes (2019), which provides that "[a]ny person may bring a civil action against an insurer when such person is damaged" by the insurer's failure to "attempt[] in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." *See generally* § 624.155(3)(a) ("As a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given [sixty] days' written notice of the violation."), (3)(c) ("No action shall lie if, within [sixty] days after the insurer receives notice . . . the damages are paid . . . ."). Progressive did not pay Kesler's claim within the sixty-day cure period and instead informed her that it considered her action "to be a dispute regarding the value of the claim" and that it would "continue [its] efforts to obtain additional information regarding the details of the loss and the alleged injury sustained by" Kesler.

At mediation in April 2020, Progressive increased its offer to $75,000 "based upon newly obtained records." Mediation ended at an impasse, and on June 26, 2020, Kesler underwent a multilevel anterior discectomy and cervical fusion. In November 2020, after learning that she had undergone surgery, Progressive tendered the $200,000 policy limits to Kesler, who at that time rejected the payment.

In May 2021 Kesler, upon leave of court, amended her complaint to add a bad faith count. The trial court abated the bad faith claim pending resolution of the UM claim. The UM count proceeded to a jury trial, and Kesler obtained a verdict in the amount of $1,676,587.90. The trial

claim against the tortfeasor's liability carrier." *Woodall v. Travelers Indem. Co.*, 699 So. 2d 1361, 1363 (Fla. 1997).

3

court entered final judgment against Progressive for the $200,000 policy limits and allowed the bad faith action to proceed.

During discovery for that action, Progressive filed a request for production of documents from Ruth Law concerning its representation of Kesler on the UM claim. Ruth Law produced some documents but objected to others, asserting work product privilege and filing a privilege log.

Also as part of discovery, Progressive took Catledge's deposition on December 4, 2024. Catledge had prepared and sent to Progressive the initial settlement demand for policy limits. She testified that in determining the value of the UM claim, she considered Kesler's medical bills, future medical expenses, lost wages, pain and suffering, aggravation of preexisting injuries, and other intangible damages. She specifically testified that she evaluated the claim to be more than the $200,000 policy limits because "this was a woman [who] was significantly hurt, required ongoing medical treatment, and would continue to require ongoing medical treatment, according to her doctors." Counsel for Progressive asked several questions regarding whether and when Kesler was willing to negotiate for or accept less than policy limits. Invoking attorney-client privilege, Catledge refused to answer these questions and three questions concerning whether she discussed certain matters with Kesler. Additionally, Catledge invoked the work product privilege in refusing to answer whether she "always demand[s] policy limits," how she calculates intangible damages, and several questions concerning Ruth Law's internal system for communicating offers between employees within the law firm.

Consequently, Progressive filed two motions seeking production of privilege log documents and a third motion to compel the deposition

testimony of Catledge, arguing that the settlement communications between Kesler and her attorney were relevant both to their motives for filing a bad faith action and to whether Progressive acted in bad faith by failing to settle a claim that Kesler had no intention of settling. The motion identified several specific deposition questions that Catledge refused to answer on the basis of the attorney-client and work product privileges and asked the trial court to overrule Catledge's invocation of the privileges, maintaining that "any claims of privilege have been waived by virtue of [Kesler's] bringing this bad faith lawsuit against Progressive." The motion specifically sought to compel from Catledge "any testimony that relates to settlement or whether Progressive 'could have' settled" Kesler's UM claim; "testimony regarding [Catledge's] communications with [Kesler] that relate to settlement of the underlying UM claim, whether Progressive had a realistic opportunity to settle the claim, or whether [Kesler] and her attorneys were willing to settle the claim"; and "testimony regarding any communication between Catledge and [Kesler] which demonstrates that [Kesler] was not willing to settle this case."

The trial court held a hearing addressing all three of Progressive's discovery motions. Progressive first addressed its motions to compel production of the privilege log documents, arguing that "work product does not apply to a claimant['s] attorney file in a bad faith action because the insurer has a substantial need for documents that would demonstrate . . . whether the claimant would or would not have accepted the policy limits." Progressive further argued that the "same concepts" entitled it to Catledge's testimony on "why [she and Kesler] were trying to contend that Progressive acted in bad faith for failing to pay the $200,000" policy limits. Counsel for Progressive stated, "I just think the

fact that Ruth Law sent this demand for the policy limits, that they should have to testify at deposition as to the basis for that demand."

The trial court entered a written order granting Progressive's motions. The order directs an in camera review of the documents listed in the privilege log. As to the issue of Catledge's deposition, the order states only that "Progressive's Motion to Compel Deposition Testimony of Plaintiff's Underlying Attorney, Amy Catledge, Esq. is **GRANTED**." The order does not include any legal analysis or factual findings, and the court offered none when orally ruling at the hearing. Furthermore, the court's order does not specify what questions Catledge must answer at deposition or place any parameters on the questions that counsel for Progressive may ask.[2]

Kesler now seeks certiorari review of the trial court's order to the extent that it compels Catledge to submit to a second deposition. "In order to obtain certiorari relief, the petitioner must establish (1) a departure from the essential requirements of the law (2) resulting in material injury for the remainder of the case (3) which cannot be corrected on postjudgment appeal." *Avatar Prop. & Cas. Ins. v. Flores*, 320 So. 3d 840, 842 (Fla. 2d DCA 2021). "Of these three elements, the

---

[2] Although the trial court's ruling on Progressive's motions to compel privilege log documents is not before this court in this proceeding, we note that the court properly granted in camera review of the documents before ordering discovery. Although prior review is not feasible in the context of deposition testimony, the court offered no judicial protections or limits to the questions that Progressive can ask Catledge at a second deposition. This practice could lead to further problems and delays in the litigation. *See generally Akerman LLP v. Cohen*, 352 So. 3d 331, 339 (Fla. 4th DCA 2022) ("[I]f attorney-client privilege is waived regarding a certain matter, the waiver is limited to communications on the same matter." (alteration in original) (quoting *Alliant Ins. Servs. v. Riemer Ins. Grp.*, 22 So. 3d 779, 781 (Fla. 4th DCA 2009))).

latter two . . . constitute the jurisdictional threshold for our certiorari review. . . ." *Id.* (quoting *Shindorf v. Bell*, 207 So. 3d 371, 372 (Fla. 2d DCA 2016)). The jurisdictional prongs are deemed satisfied where, as is the case in the instant proceeding, "[d]iscovery of 'cat out of the bag' material . . . protected by . . . privilege" is at issue. *See id.* "[T]he discovery of information that is protected by a privilege 'may reasonably cause material injury of an irreparable nature' [because] there is 'no remedy for the destruction of the privilege available on direct appeal.' " *Lender Processing Servs., Inc. v. Arch Ins.*, 183 So. 3d 1052, 1058 (Fla. 1st DCA 2015) (first quoting *Allstate Ins. v. Langston*, 655 So. 2d 91, 94 (Fla. 1995); and then quoting *Coates v. Akerman, Senterfitt & Eidson, P.A.*, 940 So. 2d 504, 506 (Fla. 2d DCA 2006)).[3]

As to whether the trial court's order departs from the essential requirements of law, Kesler argues in her petition that it does because it compels Catledge to give testimony that is protected by the attorney-client and work product privileges and incorrectly rules that she waived such privileges by virtue of her filing a bad faith action against Progressive. We agree.

Our analysis starts with the recognition that attorney-client and work product privileges exist in Florida law. Section 90.502(2), Florida Statutes (2024), provides that "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of

---

[3] In its response to Kesler's certiorari petition, Progressive argues that Kesler has failed to articulate how the trial court's order satisfies the jurisdictional prongs of the certiorari standard. However, Kesler's certiorari petition states that this court has jurisdiction to review orders compelling deposition testimony over attorney-client and work product privileges and then states that once privileged information is revealed, there is no remedy on direct appeal. We are satisfied that Kesler has sufficiently raised the argument.

confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." "The privilege may be claimed by . . . [t]he lawyer . . . on behalf of the client." § 90.502(3)(e).

Additionally, "opinion work product—which includes the attorney's mental impressions, conclusions, opinions, or theories concerning his [or her] client's case—is 'absolutely, or nearly absolutely, privileged.' " *Tedrow v. Cannon*, 186 So. 3d 43, 48 (Fla. 2d DCA 2016) (quoting *Butler v. Harter*, 152 So. 3d 705, 712-13 (Fla. 1st DCA 2014)). *See generally Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("[I]nterviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs [are] aptly . . . termed . . . as the '[w]ork product of the lawyer.' Were such materials open to opposing counsel on mere demand, . . . [i]nefficiency, unfairness[,] and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.").

Next, we must recognize that exceptions exist whereby in some specific circumstances these privileges may not be invoked. *See, e.g.*, § 90.502(4)(a)-(e) (listing circumstances under which "[t]here is no lawyer-client privilege under" the statute); Fla. R. Civ. P. 1.280(c)(4) (allowing for discovery of work product "only on a showing that the party seeking discovery has need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means"). Additionally, a litigant may waive a privilege by putting "at issue" a claim or defense that requires privileged material as evidence. *See Coates*, 940 So. 2d at 508 ("[W]aiver occurs when a party 'raises a claim that will *necessarily* require proof by

8

way of a privileged communication.' " (quoting *Jenney v. Airdata Wiman, Inc.*, 846 So. 2d 664, 668 (Fla. 2d DCA 2003))). Progressive argued below, and the trial court implicitly ruled, that by filing a bad faith action, Kesler put at issue her willingness to settle and therefore waived these privileges.

Specifically, with regard to the attorney-client privilege, Progressive argued below that the privilege only applies to "confidential communications . . . regarding the rendition of legal advice" and that the questions Catledge refused to answer were "related to factual information rather than legal advice."[4] Progressive also maintained that "even if otherwise protected by the attorney-client privilege," information regarding settlement is "directly relevant and discoverable in bad faith claims." Progressive relies on several federal district court cases for this proposition. But these cases are not binding authority in the Second District. *See Westerbeke Corp. v. Atherton*, 224 So. 3d 816, 822 (Fla. 2d DCA 2017) ("The rulings of lower federal courts are not binding on state

---

[4] The specific questions to which Catledge responded by invoking the attorney-client privilege that Progressive included in its motion below are as follows: "Is [Progressive's request that Kesler execute a medical authorization form] something that you would have discussed with Ms. Kesler when you received it, this correspondence?" "Would you discuss that [medical release] with her?" "Do you know if anyone [from Ruth Law] spoke with Ms. Kesler about this [settlement offer] letter specifically?" "And during your handling of the claim, was Ms. Kesler willing to negotiate for less than the policy limits?" "Was Ms. Kesler willing to accept less than $200,000 BI policy limit?" "When you sent the initial demand, was Ms. Kesler willing to settle for the $200,000 policy limits?" "At what point was Ms. Kesler no longer willing to settle for the $200,000 policy limits?"

These questions require more than factual answers as a client's understanding of the value of a claim and whether they should settle and for how much involves some measure of reliance on their attorney's legal advice and experience.

courts, although they may be persuasive on a point of law. Only decisions of the United States Supreme Court are binding on the state courts of Florida." (quoting *Pignato v. Great W. Bank*, 664 So. 2d 1011, 1015 (Fla. 4th DCA 1995))). Rather we are bound by the precedent of the Florida Supreme Court, which has clearly stated that "[b]ecause of the uniqueness of the attorney-client privilege, . . . attorney-client privileged communications are not discoverable in a first-party [bad faith] action." *Genovese v. Provident Life & Accident Ins.*, 74 So. 3d 1064, 1066 (Fla. 2011).

In *Allstate Indemnity Co. v. Ruiz*, 899 So. 2d 1121, 1130-31 (Fla. 2005), the Florida Supreme Court concluded that in both third- and first-party bad faith actions, the insurer's claim file material is discoverable by the insured over a *work product* objection. In *Genovese*, the supreme court considered a certified question as to whether the holding in *Ruiz* also applied to *attorney-client privileged* communications to make them also discoverable under the same circumstances. 74 So. 3d at 1065.

The *Genovese* court answered in the negative, drawing a distinction between the attorney-client privilege and the work product privilege. *Id.* at 1066, 1067. The production sought in *Genovese* was the insurer's claim file, and the supreme court explained why in bad faith actions *the work product* doctrine is set aside specifically for insurer's claims files: "Because the underlying claim materials are '*necessary* to advance [a first-party bad faith] action . . . [and] evaluate the allegations of bad faith,' *the materials fall within the confines of the exception to the work-product doctrine*, and thus are discoverable." *Genovese*, 74 So. 3d at 1068 (alterations in original) (emphasis added) (quoting *Ruiz*, 899 So. 2d at 1128-29); *see also* Fla. R. Civ. P. 1.280(c)(4) (setting forth the exception to the work product privilege). Accordingly, it is the nature of

the discovery sought and the facts and circumstances of the specific case in which it is sought that determines whether the materials are "necessary to advance [the] action" and thus discoverable over the work product privilege. *Genovese*, 74 So. 3d at 1068.

"On the other hand, the attorney-client privilege, unlike the work-product doctrine, is not concerned with the litigation needs of the opposing party." *Id.*; *see also Quarles & Brady, LLP v. Birdsall*, 802 So. 2d 1205, 1206 (Fla. 2d DCA 2002) (holding that communications privileged under section 90.502 "are not discoverable unless one of the statutory exceptions applies" and that "undue hardship is not an exception, nor is disclosure permitted because the opposing party claims that the privileged information is necessary to prove their case" (citation omitted)); *W. Bend Mut. Ins. v. Higgins*, 9 So. 3d 655, 658 (Fla. 5th DCA 2009) ("Work product may be susceptible to disclosure based on considerations of need and relevance; attorney-client privilege is not.").

Accordingly, beyond the exceptions enumerated in section 90.502(4)(a)-(e)—none of which apply here—the attorney-client privilege is not overcome simply by the nature of the discovery sought or even the material's relevance in a particular case. *See Genovese*, 74 So. 3d at 1068 ("[T]here is no exception provided under section 90.502 that allows the discovery of attorney-client privileged communications where the requesting party has demonstrated need and undue hardship."); *W. Bend Mut. Ins.*, 9 So. 3d at 658 ("If there is to be a 'first-party-bad-faith-brought-under-section-624.155-exception' to Florida's statutory privilege for communications between attorney and client, it would be up to the [l]egislature to create it.").

Nevertheless, a party can waive the attorney-client privilege by injecting into the litigation an issue that can only be proved by the

privileged material. But Kesler has not waived the privilege in this case by the mere filing of her bad faith claim. *See Coates*, 940 So. 2d at 508 ("A party does not waive the attorney-client privilege merely by bringing or defending a lawsuit."). Rather, waiver of the privilege occurs under the so-called "at issue" doctrine "[w]hen a party has filed a claim, *based upon a matter ordinarily privileged, the proof of which will necessarily require that the privileged matter be offered in evidence*." *Id.* (quoting *Savino v. Luciano*, 92 So. 2d 817, 819 (Fla. 1957)).

Here, Kesler filed a bad faith action under section 624.155(1)(b)1. This provision "extended the duty of an insurer to act in good faith and deal fairly in those instances where an insured seeks first-party coverage or benefits under a policy of insurance." *Ruiz*, 899 So. 2d at 1126. In order to prove bad faith on the part of Progressive, Kesler needs to prove that Progressive failed to settle her UM claim "when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward" Kesler "and with due regard for her . . . interests." *See* § 624.155(1)(b)1; *see also* Fla. Std. Jury Instr. (Civ.) 404.4.

Although one of the elements of the cause of action is proof that Progressive "could" have settled the claim, Kesler can seek to establish that element by evidence other than her communications with Catledge, including evidence of the amount of her damages and the various settlement demands and offers made by the parties. Proof of *her claim* for bad faith against Progressive does not "*necessarily require*" the disclosure of communications between her and her attorney or even identification of the topics they discussed. *See Coates*, 940 So. 2d at 508 (quoting *Savino*, 92 So. 2d at 819); *see also Harvey v. GEICO Gen. Ins.*, 259 So. 3d 1, 7 (Fla. 2018) ("[T]he focus in a bad faith case is *not* on the actions of the claimant but rather *on those of the insurer in fulfilling its*

12

*obligations to the insured.*" (emphasis added) (quoting *Berges v. Infinity Ins.*, 896 So. 2d 665, 677 (Fla. 2004))); *Moultrop v. GEICO Gen. Ins.*, 304 So. 3d 1, 7 (Fla. 4th DCA 2020) (same). Accordingly, Kesler has not waived her attorney-client privilege by filing this bad faith action.

And Progressive cannot waive her privilege for her by raising her alleged unwillingness to settle as a defense. Progressive maintains that information regarding if and when Kesler was willing to settle the UM claim is necessary for Progressive to prove that it did not act in bad faith because it could not have settled a claim that Kesler was unwilling to settle. It argues that Kesler's bad faith action makes this defense necessary and that therefore Kesler is the one who has put her willingness to settle at issue. But unless the evidence is "*necessarily required*" to prove Kesler's own claim, she has not waived her privilege, and the fact that Progressive may need the evidence to prove its defense does not give it the power to waive Kesler's privilege on her behalf. *See Lee v. Progressive Express Ins.*, 909 So. 2d 475, 477 (Fla. 4th DCA 2005) ("The motives of Lee and his attorney regarding the timing of the settlement offer and rejection of Progressive's subsequent settlement offer are not elements that Lee has to prove to establish a bad faith claim against Progressive. . . . If the insurer raises this as a defense, it has the burden of proving that the claimant was unwilling to settle."); *see also Coates*, 940 So. 2d at 508 ("[Defendants below], *by asserting a defense based upon [plaintiffs'] alleged communications with [plaintiffs' attorneys], have sought to place such communications at issue.* [Defendants] have not shown that [plaintiffs] must necessarily offer the disputed [privileged material] at trial to prove [plaintiffs'] claims. Instead, [defendants] seek the documents in the hope that they will contain information helpful to [the] defense . . . ." (emphasis added)). *See generally Akerman LLP v.*

13

*Cohen*, 352 So. 3d 331, 337 (Fla. 4th DCA 2022) ("The client is the holder of the privilege and is the only person who may waive it." (quoting Charles W. Ehrhardt, *Florida Evidence* § 502.8 (2014 ed.))). If Progressive wants to argue this defense, it is Progressive's burden to prove that Kesler was not willing to settle, not Kesler's burden to prove that she was. *See Powell v. Prudential Prop. & Cas. Ins.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991) (noting in a bad faith action that it is the insurer's burden to show "that there was no realistic possibility of settlement within policy limits").[5]

Because it was Progressive and not Kesler who put her willingness to settle at issue, Kesler has not waived her attorney-client privilege, and Catledge was free to invoke it on Kesler's behalf at deposition.[6] *See* § 90.502(3)(e). Therefore, the trial court departed from the essential requirements of law by granting Progressive's order to compel the

---

[5] Progressive also has suggested that information regarding the timing of Kesler's surgery was further evidence of her unwillingness to settle and her and Catledge's strategy to pursuing a bad faith claim. These necessity arguments by Progressive seem to be an attempt to overcome the attorney-client privilege by way of rule 1.280(c)(4), but while a showing of need is required to overcome the work product privilege, "there is no exception . . . that allows the discovery of attorney-client privileged communications where the requesting party has demonstrated need and undue hardship." *See Genovese*, 74 So. 3d at 1068.

[6] Although *Genovese* addressed the attorney-client privilege in the context of the production of the insurer's claim file, contrary to Progressive's assertion, the right to assert the attorney-client privilege in a bad-faith action—as in any action—is a reciprocal protection afforded to both parties and their respective counsel. *See* § 90.502(1)(c) ("A communication between lawyer and client is 'confidential'. . . ."), (1)(b) (defining *client* as "*any* person . . . who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer" (emphasis added)).

14

testimony of Catledge regarding confidential communications "made in the rendition of legal services" by Catledge to Kesler.  *See* § 90.502(2).  This includes but is not limited to whether they had discussions concerning settlement demands and offers as well as the contents of those discussions.

Furthermore, the trial court's order departs from the essential requirements of law in overruling Catledge's use of the work product privilege.  In its motion below, Progressive again cited several federal district court cases for the proposition that "work product does not apply to underlying litigation in a subsequent bad faith action."  But again, we are bound by Florida law, *see Westerbeke Corp.*, 224 So. 3d at 822, including rule 1.280, subsection (c)(4) of which allows for the discovery of work product material "*only* on a showing that the party seeking discovery has need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means."  (Emphasis added.)

Progressive's motion identified several questions for which Catledge invoked the work product privilege, including questions about how she calculates intangibles when valuing a claim, whether she always demands policy limits, Ruth Law's internal system for communicating within the law firm, and when the law firm representing Kesler on the bad faith claim was retained.  But the motion did not allege why Progressive needed the answers to these questions "in the preparation of [its] case," *see* Fla. R. Civ. P. 1.280(c)(4), beyond repeatedly stating that work product objections are not "applicable" in bad faith actions.  That is insufficient to establish need under rule 1.280(c)(4).

15

And Progressive is incorrect that work product is not applicable in a bad faith action. The holding of *Ruiz* is very specifically limited to the insurer's claim file:

> [T]he [l]egislature[] mandate[s] that the insurer's good faith obligation to process claims establishes a . . . relationship with the insured requiring fair dealing, . . . thus making the *claim processing type file material* discoverable under a claim for first-party bad faith just as with third-party actions. There simply is no basis upon which to distinguish between first- and third-party cases with regard to the rationale of the *discoverability of the claim file type material*.

899 So. 2d at 1129 (emphasis added).

In its response to Kesler's certiorari petition, Progressive argues to this court that not applying this rule "reciprocally to the work-product of the insured's attorney in a bad faith action . . . is a selective and flawed interpretation." We cannot agree. Nothing in *Ruiz* makes the insured's attorney's work product automatically discoverable. Rather, the parties must adhere to the dictates of rule 1.280(c)(4), which clearly puts the burden to show a need for the specific materials on the party seeking to overcome the work product privilege.

Furthermore, need is not the only requirement for production spelled out in rule 1.280(c)(4). Pursuant to the rule, in order to compel production of work product, a party seeking discovery must also make "a showing that [it] . . . is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id.* Here, even if the trial court concluded that Progressive had established its need for the work product materials, it was required to then address the second prong of the rule. But undue hardship was not addressed by either the parties or the trial court. Accordingly, Progressive did not satisfy its burden of establishing that the work product information it sought during Catledge's deposition was discoverable under the rule. *See*

16

*generally Hickman*, 329 U.S. at 512 ("[T]he general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.").

In conclusion, the trial court departed from the essential requirements of law in granting Progressive's motion to compel the deposition testimony of Catledge. This resulted in a material injury that cannot be remedied on appeal. We therefore grant Kesler's petition for certiorari and quash the trial court's order to the extent that it requires Catledge to provide the requested deposition testimony in violation of the attorney-client and work product privileges.

Petition granted; order quashed in part.

SILBERMAN and MORRIS, JJ., Concur.

_____

Opinion subject to revision prior to official publication.